[No. D049589. Fourth Dist., Div. One. Dec. 13, 2007.]

INGO SCHWEITZER, Plaintiff and Appellant, v.
WESTMINSTER INVESTMENTS, INC., et al., Defendants and Appellants.

[No. D049616. Fourth Dist., Div. One. Dec. 13, 2007.]

INGO SCHWEITZER, Plaintiff and Respondent, v.
WESTMINSTER INVESTMENTS, Defendants and Appellants.

**COUNSEL**

Michael V. Hesse for Plaintiff and Appellant and for Plaintiff and Respondent.

Edmund G. Brown, Jr., Attorney General, Albert Norman Shelden, Assistant Attorney General, Ronald A. Reiter and Seth E. Mermin, Deputy Attorneys General, for the State of California as Amicus Curiae on behalf of Plaintiff and Appellant and Plaintiff and Respondent.

Turner & Maasch, Mark A. Maasch; University of San Diego School of Law and Shaun P. Martin for Defendants and Appellants.

June Babiracki Barlow and Neil D. Kalin for California Association of Realtors as Amicus Curiae on behalf of Defendants and Appellants.

OPINION

**McDONALD, J.**—The Home Equity Sales Contracts Act (Civ. Code, § 1695 et seq.; HESC)[1] was enacted to protect homeowners faced with mortgage foreclosure proceedings from being victimized by persons employing oral and written misrepresentations, intimidation, and other unreasonable commercial practices to induce the homeowners to sell their homes for a fraction of their fair market values and lose the equity in the homes. (*Boquilon v. Beckwith* (1996) 49 Cal.App.4th 1697, 1709 [57 Cal.Rptr.2d 503].) In 1990, the Legislature amended the HESC to add sections 1695.15 through 1695.17, which (1) made the home equity purchaser liable for all damages caused by the purchaser's "representative" (§ 1695.15) and (2) imposed licensing and bonding requirements on (and disclosures by) the representatives (§ 1695.17). (Stats. 1990, ch. 1537, §§ 1–3, p. 7215.) The construction and operation of these sections, which have yet to be explored by the courts, is at the core of the present dispute.

In 2003, plaintiff Ingo Schweitzer's home mortgage was in foreclosure. Defendant Westminster Investments, Inc. (Westminster), through its representative Ms. Cote, agreed in writing to purchase Schweitzer's home and, upon expiration of the statutorily prescribed waiting period (§ 1695.4), Schweitzer conveyed title to the home to Westminster by grant deed. Six months later, Schweitzer filed this action to void the deed, arguing the purchase contract was voidable under the HESC because, among other things, Westminster did not provide proof that Cote was bonded, as required by section 1695.17. The court ruled that because Cote was not bonded (and Westminster concomitantly failed to provide proof of the bond) the purchase contract was voidable and Schweitzer was entitled to reclaim title to the home from Westminster.

On appeal, Westminster asserts the proper interpretation of section 1695.17 is that the bonding requirement applies only to representatives who use undisclosed equity purchasers to purchase homes in foreclosure, and that because Cote disclosed she was acting on behalf of Westminster, the requirements of section 1695.17 are inapplicable. Westminster asserts that a contrary interpretation would render section 1695.17 invalid under the equal protection clause of the United States Constitution. Westminster also argues the bond requirement is void for vagueness under the due process clause,[2] and the attorney fees award to Schweitzer was error.

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] Westminster also argues, even assuming its representatives were required to be bonded, the remedies provided under the statutory scheme for that technical violation do not include the remedy granted below, i.e., a judgment quieting title to the seller. Although our disposition makes it unnecessary to decide whether the absence of a bond permits the seller to cancel the recorded deed, we have substantial doubts the statutory scheme contemplated that remedy would be available if the only violation of the HESC is the absence of a bond. The HESC

Schweitzer's cross-appeal argues the trial court (1) erred when it found the purchase contract provided adequate notice of Schweitzer's right to cancel, and (2) erroneously excluded evidence of a purported violation by Westminster of section 1695.16. Because of the nature of the issues in this case, we have received and considered amicus curiae briefs from the State of California and the California Association of Realtors.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Facts*

A home owned by Schweitzer was the subject of mortgage foreclosure proceedings and, by September 9, 2003 (the day before the scheduled trustees sale), Schweitzer was in arrears on 13 monthly payments exceeding $16,000. On September 9, Mr. Webster (an agent working for Westminster) contacted Schweitzer regarding Westminster's potential purchase of the home. That evening, Mr. Webster and Ms. Cote (another agent working for Westminster) came to Schweitzer's home and Schweitzer signed a contract to sell the home to Westminster. Schweitzer knew Westminster was the buyer and Webster and Cote were acting as agents for Westminster.

On September 10, Schweitzer signed the grant deed and delivered it to Westminster, which recorded it. Also on September 10, Westminster asked the foreclosure trustee to ascertain the amount required to reinstate the loan. The trustee postponed the sale and, on September 11, informed Westminster that nearly $23,000 would be required to reinstate the loan. Westminster sent the necessary funds to the lender the following day and the loan was reinstated.

---

specifically provides for the remedy of rescission and cancellation of the deed *after* the recordation of the conveyance in section 1695.14, but that remedy is available only for a "transaction . . . in violation of Section 1695.13." (§ 1695.14, subd. (a).) The HESC does not similarly extend that remedy to violations of section 1695.17. Instead, section 1695.17 provides that the failure to comply with its provisions "shall at the option of the equity seller render *the equity purchase contract* void." (Italics added.) It appears the HESC's adoption of section 1695.17 was designed to allow the seller to refuse to perform the purchase contract *before* the conveyance was recorded, but would not (by the absence of any reference to section 1695.17 in the rescission provisions of section 1695.13) permit that remedy *after* the conveyance was recorded. We do not reach that issue because we conclude the bond requirement is void.

The purchase contract allowed Schweitzer to stay in the home until January 2, 2004, at a rental rate of $1,300 per month, to be paid by deducting the monthly rents from the purchase contract cash consideration Westminster owed to Schweitzer. Westminster later extended Schweitzer's occupancy to January 31, 2004. When Schweitzer did not vacate the home, Westminster commenced unlawful detainer proceedings. Schweitzer responded by filing the present action and tendered restitution of the amounts paid by Westminster to reinstate the loan.

### B. *The Litigation*

Schweitzer's complaint alleged the purchase contract was voidable because Westminster did not provide proof of Cote's bonding. Schweitzer's complaint also alleged the purchase contract was voidable because it did not provide adequate notice of his right to cancel and was unconscionable. (§§ 1695.5, 1695.13, 1695.14.) Westminster disputed those allegations.

Westminster contended the statutory language, considering the legislative history of the 1990 amendments, showed the bond requirement was intended to apply only when an undisclosed equity purchaser used a "front man" to importune the homeowner into selling his or her home, and did not apply when the agent disclosed the identity of the equity purchaser to the seller. Westminster asserted that if the statute were construed to require that a disclosed principal use a bonded agent to negotiate with a seller, it would discriminate against corporate buyers (which can act only through agents) by imposing a bond requirement on corporate buyers while imposing no similar bond requirement on individuals who negotiate directly with sellers to acquire homes in their individual names. Westminster argued this discriminatory impact would invalidate the statute under the equal protection clause because there was no rational basis for distinguishing between individual and corporate equity purchasers and treating them differently under the bonding statute. Westminster also asserted, in response to the court's ruling denying Westminster's motion for judgment on the pleadings, that application of section 1695.17 to this transaction would violate due process because Westminster did not receive fair notice of what it was required to do to comply with the bonding provisions of section 1695.17.

On the eve of trial, Schweitzer moved to amend his complaint to allege the contract was also voidable because a provision violated section 1695.16, which prohibits limitation of liability in a home equity purchase contract. Westminster opposed the motion, and concurrently filed a motion in limine to preclude Schweitzer from raising the issue at trial. The court denied the motion for leave to amend and granted the motion in limine.

The matter was tried on stipulated facts. The court rejected Schweitzer's arguments that the contract was rescindable because of inadequate notice of Schweitzer's right to cancel or because of unconscionability. However, the court ruled the deed could be canceled for noncompliance with the bond requirement of section 1695.17. The court concluded the statutory requirement for a bond applied to all persons acting as representatives for an equity purchaser, regardless of whether the identity of the purchaser was disclosed to the seller, and rejected Westminster's argument that this interpretation rendered the statute unconstitutional under the equal protection clause. The court also rejected Westminster's due process claims. Accordingly, the court declared the deed to the home void and ruled Schweitzer was entitled to title to the home based on Westminster's violation of section 1695.17. The court awarded attorney fees to Schweitzer in a posttrial motion.

On appeal, Westminster challenges the judgment both as to the court's declaration awarding title to the home to Schweitzer and as to the posttrial order awarding attorney fees to Schweitzer.[3] We reverse the judgment on the merits and necessarily vacate the order awarding attorney fees to Schweitzer. By cross-appeal, Schweitzer challenges the orders denying him leave to amend his complaint and granting Westminster's motion in limine precluding him from raising the section 1695.16 issue. We affirm the latter rulings.

II

OVERVIEW

The key disputed issue is whether section 1695.17 is enforceable, either as applied to this transaction or more generally to any transaction subject to the HESC. Section 1695.17 provides:

"(a) Any representative, as defined in subdivision (b) of Section 1695.15, deemed to be the agent or employee, or both the agent and the employee of the equity purchaser shall be required to provide both of the following:

"(1) Written proof to the equity seller that the representative has a valid current California Real Estate Sales License and that the representative is

---

[3] Westminster has filed a motion to augment the record on appeal to include a declaration filed in the proceedings below, and a motion requesting we take judicial notice of various articles published by amicus curiae California Association of Realtors. We grant the motion to augment. We also grant the motion for judicial notice, although we consider those articles for the limited purpose of demonstrating what advice has been given in those articles, and not for the truth of the statements contained therein. (Cf. *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807, fn. 5 [119 Cal.Rptr.2d 108].)

bonded by an admitted surety insurer in an amount equal to twice the fair market value of the real property which is the subject of the contract.

"(2) A statement in writing, under penalty of perjury, that the representative has a valid current California Real Estate Sales License, is bonded by an admitted surety insurer in an amount equal to at least twice the value of the real property which is the subject of the contract and has complied with paragraph (1). The written statement required by this paragraph shall be provided to all parties to the contract prior to the transfer of any interest in the real property which is the subject of the contract.

"(b) The failure to comply with subdivision (a) shall at the option of the equity seller render the equity purchase contract void and the equity purchaser shall be liable to the equity seller for all damages proximately caused by the failure to comply."

Section 1695.15 defines a "representative," for the purposes of the licensing and bonding requirements (§ 1695.17, subd. (a)), to mean "a person who in any manner solicits, induces, or causes any property owner to transfer title or solicits any member of the property owner's family or household to induce or cause any property owner to transfer title to the residence in foreclosure to the equity purchaser."

The trial court determined section 1695.17 was applicable to the purchase contract in this matter and rejected Westminster's challenges to its validity. The parties agree that we review de novo the court's interpretation of the statutory scheme, as well as its application to the undisputed facts.

■ When construing a statutory scheme, our primary guiding principle is to ascertain the intent of the Legislature to effectuate the purpose of the law. (*Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) We "[turn] first to the words themselves for the answer" (*People v. Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]), and attempt to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33].) If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose (*Watkins v. Real Estate Commissioner* (1960) 182 Cal.App.2d 397, 400 [6 Cal.Rptr. 191]), and we construe the statutory language in its context, keeping in mind the nature and purpose of the statute in which they appear (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665]). The various parts of a statutory enactment should be harmonized by considering the particular clause or section in the

context of the statutory framework as a whole. (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].)

III

THE BOND REQUIREMENT

■   Westminster argues we may rely on the legislative history accompanying the 1990 amendments to the HESC, which added the bond requirement, to construe the bond requirement as applicable only when the agent is representing an undisclosed principal. The cited legislative history reflects one of the concerns addressed by the legislation was that agents representing undisclosed principals were engaged in reprehensible conduct toward home equity sellers. (See Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2641 (1989–1990 Reg. Sess.) as amended Aug. 27, 1990, p. 3.) However, nothing in the statutory language suggests the licensing and bonding requirements were applicable *only* to agents representing undisclosed principals.[4] Westminster's proposed construction would require the addition of language limiting section 1695.17 to agents for undisclosed principals. A court may not add to or alter the clear language of the statute to insert conditions or exceptions not included by the legislative enactment. (Code Civ. Proc., § 1858 ["In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted."].) We conclude Westminster was subject to the bond requirement of section 1695.17 under the facts of this case.

---

[4] Westminster asserts that, if we construe the statute as requiring agents of a disclosed principal to be bonded, the statute violates equal protection because it imposes a greater burden on a corporation (e.g., requiring a bond) than on a similarly situated individual, and there is no rational basis for this discriminatory imposition of a greater burden on a corporation than on an individual. Westminster notes that corporations, which necessarily act through their agents and employees (see, e.g., *Hughes v. Los Angeles* (1914) 168 Cal. 764, 765 [145 P. 94]), would be required to satisfy the bond condition for its agents to enter an enforceable equity purchase contract. In contrast, the statute does not purport to require an individual, seeking to enter the same equity purchase contract on his or her own account, to be similarly licensed and bonded. Although our conclusion makes it unnecessary to evaluate Westminster's equal protection argument, we have substantial doubt that there is no rational basis for distinguishing between equity buyers using representatives from equity buyers acting alone and for their own accounts, because the latter would presumably have greater incentive to avoid fraudulent or unconscionable practices (because of potential criminal sanctions under § 1695.8 and potential unlimited personal liability) than would a corporate entity acting through agents.

IV

VAGUENESS

A. *Applicable Principles*

██ A statute is void for vagueness if persons of common intelligence must guess as to its meaning and differ as to its applications. (*Franklin v. Leland Stanford Junior University* (1985) 172 Cal.App.3d 322, 347 [218 Cal.Rptr. 228].) "The void-for-vagueness doctrine reflects the principle that 'a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' [Citation.] The requirement that government articulate its aims with a reasonable degree of clarity ensures that state power will be exercised only on behalf of policies reflecting an authoritative choice among competing social values, reduces the danger of caprice and discrimination in the administration of the laws, enables individuals to conform their conduct to the requirements of law, and permits meaningful judicial review." (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 629 [82 L.Ed.2d 462, 104 S.Ct. 3244].)

When assessing a facial challenge to a statute on vagueness grounds, courts should where possible construe the statute in favor of its validity and give it a reasonable and practical construction in accordance with the probable intent of the Legislature; a statute will not be declared void for vagueness or uncertainty if any reasonable and practical construction can be given its language. (*Turner v. Board of Trustees* (1976) 16 Cal.3d 818, 826–827 [129 Cal.Rptr. 443, 548 P.2d 1115].) The statute must nevertheless be sufficiently clear to give fair warning of the prohibited or required conduct, although a statute not sufficiently clear may be made more precise by judicial construction and application of the statute in conformity with the legislative objective. (*Franklin v. Leland Stanford Junior University, supra*, 172 Cal.App.3d at pp. 347–348.)

B. *Evaluation*

Westminster asserts the statutory requirement that representatives of home equity purchasers subject to the HESC be "bonded by an admitted surety insurer in an amount equal to twice the fair market value of the real property which is the subject of the contract" (§ 1695.17, subd. (a)(1)) is so vague and ambiguous with regard to the nature and conditions of the required bond that

persons of common intelligence must necessarily guess at its meaning and differ as to what is required.[5]

### The Amount Is Ambiguous

The statute does not specify *the total amount* of the bond required by the statute. There are two conflicting interpretations as to the amount of the bond. The first interpretation is that the representative must proffer proof that he or she has a *separate* bond for each transaction in an amount equal to at least twice the fair market value of the home subject to that transaction. The alternative interpretation is that a representative may conduct multiple transactions under the umbrella of a single "blanket" bond as long as the blanket bond is at least twice the amount of the fair market value of the real property on any individual transaction. Neither the text of the statute nor the accompanying legislative history provides guidance to determine the legislative intent regarding the amount of the bond, and there are no administrative rulings or regulations addressing this issue.

The trial court below concluded a single blanket bond satisfies the statutory requirement. The Attorney General, appearing in an amicus curiae capacity on appeal, relies on the interpretative maxims that we should "select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the [statute's] general purpose" while simultaneously "avoid[ing] a construction that would lead to unreasonable, impractical, or arbitrary results" (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1291 [48 Cal.Rptr.3d 183, 141 P.3d 288]) to argue the trial court correctly held a blanket bond is what is required. However, the basis for this conclusion rests not on statutory language, but instead on the practical recognition that the alternative interpretation would require such a massive outlay of collateral by the representative that it would produce an unreasonable or impractical result.

---

[5] The evidence submitted below suggested no surety carrier was willing to issue the bonds, and amicus curiae California Association of Realtors has advised its members that it was "unaware of any insurer currently offering the bond." Our research has revealed no administrative regulations describing the nature of the required bond or delineating its contents, and the legislative history accompanying the adoption of the bond requirement does not hint at the nature or contents of the bond. We therefore have only the statutory language of section 1695.17 to attempt to determine what is required to comply with its provisions. Schweitzer did submit a declaration from Mr. Back, a vice-president of a company that issues a variety of different bonds, stating his company would consider issuing a bond meeting the requirements of section 1695.17. However, Westminster proffered a subsequent declaration from Mr. Back in which he explained (1) his company had never issued such a bond "as it is not practical given the overly broad and general requirement of the statute," and (2) his company would be willing to issue such a bond only if the principal on the bond posted "cash collateral equal to the penalty amount of the bond."

We agree these economic realities suggest individualized bonds would be unreasonable or impractical. However, although this interpretation (in favor of a blanket bond) may rely on sound *economic* considerations, that interpretation is untethered to any *statutory language* and could be contrary to the apparent textual focus of section 1695.17, subdivision (a)(1), because the language of that subdivision defines the *amount* of the bond by reference to the *individual transaction* for which it is proffered.[6] Moreover, to the extent the statute is to be interpreted "with a view to promoting rather than defeating the statute['s] general purpose" (*Copley Press, Inc. v. Superior Court, supra,* 39 Cal.4th at p. 1291), it appears individualized bonds would provide a source of recovery for injured equity sellers but a blanket bond could be exhausted as a source of recovery were it subjected to numerous claims by injured equity sellers.[7] The Attorney General supports his interpretation with a second rationale. He argues that, because a surety only issues bonds to persons with demonstrable financial strength and good character, the blanket bond is consistent with the statutory goal of preventing "fly-by-night" representatives from acting as representatives. Whatever merit this argument may have, it introduces (or perhaps merely reveals) yet another ambiguity in the statute at which persons of common intelligence must necessarily guess: what *type* of bond does the statute require? For example, a representative may be covered by a fidelity bond in the requisite amount, thereby establishing the "bondability" the Attorney General suggests would suffice, but this type of bond would protect the representative's employer for specified malfeasance as to the employer (see generally Conners, Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar 1969) Forms of Fidelity, § 15.1 et seq., p. 215 et seq.) rather than the equity seller. Other types of bonds in the requisite amount would similarly satisfy the representative's bondability, but the statute is silent on whether *any* bond (of *whatever* form) would suffice. Accordingly, the statute is equally susceptible to the interpretation that the protective purpose of the bond requirement necessitates a separate bond for each transaction. We are convinced that persons of common intelligence must necessarily guess what the statute requires as to the amount of the bond,

---

[6] Moreover, the proffered construction violates the " ' "settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes." ' " (*In re Marriage of Corman* (1997) 59 Cal.App.4th 1492, 1499 [69 Cal.Rptr.2d 880], quoting *In re Jose A.* (1992) 5 Cal.App.4th 697, 701–702 [7 Cal.Rptr.2d 44].) The Legislature has demonstrated that, when it intends to require a blanket bond rather than individual bonds, it is capable of clearly expressing that intent. (See Fin. Code, § 6203, subd. (b) ["In lieu of individual bonds, a blanket bond . . . may be obtained."].)

[7] Although we assume here (for purposes of discussion) the bond would serve as a fund to which injured equity sellers could look for recompense, it is far from clear (as we discuss below) the bond *would* serve that purpose.

because the resort to its language provides no guidance and considerations extraneous to the statutory language would equally support diametrically opposed interpretations.

### The Obligee Is Uncertain

Even were we comfortable speculating (based on economic considerations extraneous to statutory language or legislative history) that a blanket bond would satisfy the statute, the statute would still be devoid of adequate notice of other essential elements of a bond that would guide a representative to know what bond would comply with the statute. Section 1695.17 requires the representative be "bonded" without identifying who is to be the *obligee* on the bond. Unlike other statutory bonds required as conditions to various business activities,[8] a representative of an equity purchaser seeking to comply with section 1695.17 must speculate whether the bond is to identify the obligee on the bond as the individual home equity seller (if individualized bonds are required by the section), or the State of California, or some other undefined obligee.

The Attorney General posits that because Code of Civil Procedure section 995.830 specifies the bond shall "be to the State of California" when a statutory bond "does not specify the beneficiary of the bond," the absence of any specific identification in section 1695.17 does not deprive the representative of notice of what is required. Assuming the default provision of Code of Civil Procedure section 995.830 provides a person of common intelligence notice of who the obligee on the bond shall be, this construction leaves unanswered an entirely new set of issues relating to the conditions that must be included in the requisite bond: if the State of California is indeed the

---

[8] For example, Business and Professions Code section 17511.12, subdivision (a) requires certain bonds for telephone sales marketers to be posted "in favor of the State of California for the benefit of any person suffering pecuniary loss in a transaction commenced during the period of bond coverage with a telephonic seller who violated this chapter," and provides for the enforcement mechanisms of the bond. Similarly, the provisions of Civil Code section 1812.510, subdivision (b), imposing a bond requirement for employment counseling services, provides the bond "shall be in favor of, and payable to, the people of the State of California, and . . . shall be for the benefit of any person or persons damaged by any violation of this title." Similar provisions articulate the requirements for other bonds required as a condition of transacting certain types of businesses. (See Bus. & Prof. Code, § 6405, subd. (h) [requiring bond by legal document assistants in a specified amount "in favor of the State of California for the benefit of any person who is damaged as a result of the violation of this chapter"]; Bus. & Prof. Code, § 7071.10, subd. (a) [contractor's bond "shall be executed by an admitted surety insurer in favor of the State of California . . . for the benefit of the following persons . . ."]; Civ. Code, § 1812.104 [bond required for discount buying club "shall be in favor of the State of California for the benefit of any person who is damaged by any violation of this title"]; Fin. Code, § 12207 [bond required for bill payer or prorater "shall run to the state for the use of the state and of any person who has a cause of action against the principal under the provisions of this division"].)

intended obligee, what are the conditions for payment on the bond, and who is the beneficiary of the bond?

### The Conditions on and Beneficiaries of the Bond Are Undefined

■    Ordinarily, a bond identifies the obligation secured and the conditions precedent to the surety's obligation to the identified beneficiary (see generally Conners, Cal. Surety & Fidelity Bond Practice, *supra*, § 2.1 et seq., p. 13 et seq.), and when a bond is posted as required by a statute, the terms and conditions of the bond are statutorily defined. (*Id.*, § 5.2, pp. 39–40; accord, *Electrical Electronic Control, Inc. v. Los Angeles Unified School Dist.* (2005) 126 Cal.App.4th 601, 612 [24 Cal.Rptr.3d 316].) Here, however, section 1695.17 does not identify the obligation secured, does not describe the terms and conditions of the bond, and is even silent on the identity of the person or persons for whose benefit the bond is provided. This court asked how claims on the bond would be made and resolved. The Attorney General's response— that Code of Civil Procedure section 995.850, subdivision (a) governed these questions by providing the bond could be "enforced by or for the benefit of, and in the name of, any and all persons for whose benefit the bond [was] given who are damaged by breach of the condition of the bond"—only highlights the absence of clarity in the statute. Unlike other statutes that identify the person for whose benefit the bond is given and the conditions to recovery on the bond (see fn. 8, *ante*), section 1695.17 does not identify the beneficiary of the bond, the liability covered by the bond, or the conditions to recovery on the bond. A person of ordinary intelligence could only guess at what the law required of him or her to satisfy the bond obligation of section 1695.17, and this quagmire of vagueness adds to our conclusion that the bond aspect of section 1695.17 offends due process.

### The Delivery or Posting Requirements Are Unidentified

A bond is ordinarily ineffective until it has been delivered to the obligee (see *Flora v. Aetna Cas. & Surety Co.* (1962) 207 Cal.App.2d 376, 378 [24 Cal.Rptr. 305]), and it appears the various statutes that require surety bonds carry a concomitant posting or filing requirement to effectuate the requisite delivery. (See generally 11 C.J.S. (1995) Bonds, § 16, pp. 13–14; *Moses v. Royal Indemnity Co.* (1916) 276 Ill. 177, 180 [114 N.E. 554].) Unlike other statutory bonds,[9] section 1695.17 is silent on where or to whom the referenced bond should be delivered, posted or filed. The Attorney General posits

---

[9] See, e.g., Business and Professions Code section 17511.12, subdivision (a) (bond for telephone sales marketers to be "filed with the Consumer Law Section of the Department of Justice"); section 1812.510, subdivision (a) (bond for employment counseling services "shall be filed with the Secretary of State"); section 1812.103 (bond for discount buying club "shall be filed with the Secretary of State"); Business and Professions Code section 6405, subdivisions

that the HESC obviates the need for filing because section 1695.17, by requiring the representative to provide proof to the homeowner of the bond, provides assurance the bond will be maintained. However, this construction of the statute leaves unanswered the fundamental question of the enforceability of the bond,[10] and instead raises further ambiguities. For example, if the bond is never filed with or delivered to the obligee, which the Attorney General presumes is the State of California, how does the representative know whether the terms and conditions of the required bond have been approved and accepted by the obligee? (See 11 C.J.S. (1995) Bonds, § 18, p. 15 ["Every bond, in order that it may be a binding obligation, must not only be executed and delivered by the obligor, but must also be accepted by the obligee. Statutory or official bonds made payable to the state cannot become effective until they are accepted by those duly authorized to accept them." (Fns. omitted.)].) How does the representative know the term for which the bond must be maintained?[11] If only a single blanket bond is contemplated, is leaving possession of the bond in the representative's hands for display to prospective equity sellers inconsistent with limiting the bond to the stated monetary limits?

*Conclusion*

■ We are convinced that the amorphous requirement of section 1695.17, subdivision (a)(1), requiring proof the representative is "bonded by an admitted surety insurer in an amount equal to twice the fair market value of the real property which is the subject of the contract," provides no guidance on the amount, the obligee, the beneficiaries, the terms or conditions of the bond, the delivery and acceptance requirements, or the enforcement mechanisms of the required bond. Instead, persons of ordinary intelligence must necessarily guess at what the statute requires for them to comply with its obligations. Under these circumstances, the bond requirement of section 1695.17 is void for vagueness under the due process clause and may not be enforced. (See, e.g., *City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino* (1997) 59 Cal.App.4th 237, 245–251 [69 Cal.Rptr.2d 97].)

---

(b) through (d) (bond for legal document assistants filed with county clerk and recorded by county recorder); Business and Professions Code section 7071.5 (contractor's bond "shall be . . . filed with the registrar").

[10] The Attorney General argues that no statute conditions the enforceability of a bond on its filing, and therefore the bond is entirely enforceable. However, the Attorney General cites no authority suggesting an *undelivered* bond is enforceable, or any authority that even if the section 1695.17 bond is to be delivered to the principal on the bond (a question ambiguous under the statute) delivery to the principal would suffice to render the bond enforceable.

[11] Under the default provisions of the Bond and Undertaking Law (Code Civ. Proc., § 995.010 et seq.), a bond expires after its term ends (*id.*, § 995.430), but a bond given as a condition of a license or permit runs concurrently with the license or permit period. (*Id.*, § 995.440.) It is unclear whether the section 1695.17 bond is a bond given as a condition of the right to do business within the meaning of Code of Civil Procedure section 995.440.

█ Although we conclude the bond requirement may not be enforced, the remainder of the statutory scheme remains valid if the bond provisions are severable from the balance of the enactment. (*California Gillnetters Assn. v. Department of Fish & Game* (1995) 39 Cal.App.4th 1145, 1158 [46 Cal.Rptr.2d 338].) The HESC contains a "severability" provision specifying that if any provision of the HESC is declared unconstitutional, the remainder shall not be affected. (§ 1695.11.)  █ " 'Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. . . . Such a clause plus the ability to mechanically sever the invalid part while normally allowing severability . . . does not conclusively dictate it. The final determination depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . .' [Citations.] . . . [¶] The cases prescribe three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable. [Citations.]" (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821–822 [258 Cal.Rptr. 161, 771 P.2d 1247].)

All three criteria are met here. The HESC contains 18 sections, prescribing a wide range of rules regulating the conduct of and contractual provisions for home equity sales contracts, and only a portion of one section refers to the bonding requirement. We conclude the clauses containing the bond requirement are grammatically severable from the remaining provisions of the HESC. (*In re Blaney* (1947) 30 Cal.2d 643, 655 [184 P.2d 892] [language of statute is mechanically severable "where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words."].) The clauses are also functionally severable: the remaining portions of section 1695.17 impose a licensing requirement on the representative, and the remaining sections added by the 1990 statutory enactment (1) made the equity purchaser liable for all damages caused by the equity purchaser's representative (§ 1695.15), and (2) made a contractual provision (purporting to limit liability of the purchaser) a ground for voiding the purchase contract (§ 1695.16). None of these remaining 1990 additions, nor any other portion of the HESC, are undermined by elimination of the bonding requirement. Finally, a provision "is 'volitionally' separable if it was not of critical importance to the measure's enactment." (*Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 613 [88 Cal.Rptr.2d 56, 981 P.2d 990].) The statutory enactment had numerous purposes, including enacting section 1695.15 to ensure that buyers acting through a representative would be bound by and liable for the representative's actions, and ensuring the contract did not include clauses purporting to limit the liability imposed by section 1695.15 (see § 1695.16), and requiring that a representative hold a valid California real estate sales license

(§ 1695.17). We are convinced the Legislature would have enacted these regulatory provisions even were the bond requirement excised from the enactment.

## V

## THE CROSS-APPEAL

Schweitzer raises two issues in his cross-appeal. First, he asserts the trial court erred when it rejected his claim that he was entitled to a judgment canceling the deed and quieting title because of alleged noncompliance with section 1695.5. Second, he asserts the trial court erroneously precluded him from introducing evidence that the contract violated section 1695.16.

### A.  *The Section 1695.5 Claim*

Schweitzer peremptorily asserts, without citation either to the record or to any relevant authority,[12] that the contract did not comply with the requirement (imposed by section 1695.5, subdivision (a)) that the notice informing him of his right to cancel be in immediate proximity to the space reserved for his signature. However, the HESC does not specify that a violation of section 1695.5 provides grounds for rescinding a transaction after recordation of the deed. More importantly, the purchase contract, which contains the required notice, placed the notice in the paragraph following the signature line and on a page that required the seller to again sign by initialing. Thus, the notice was in "immediate proximity to the space[s] reserved for the . . . seller's signature" (§ 1695.5, subd. (a)), and therefore complied with section 1695.5.

### B.  *The Section 1695.16 Claim*

Schweitzer asserts the trial court erred when it granted Westminster's motion in limine to bar any evidence concerning, or any argument referring to, an alleged violation of section 1695.16. The court ruled the alleged violation of section 1695.16 was not one of the grounds raised by the complaint, and granted the motion.[13] Section 1695.16 prohibits the inclusion of a provision in the purchase contract limiting the liability of the equity purchaser for a violation of section 1695.15.

---

[12] This omission would permit the court to deem the claim waived on appeal (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838] [failure to present argument or authority]; *In re S.C.* (2006) 138 Cal.App.4th 396, 406–407 [41 Cal.Rptr.3d 453] [failure to cite record]), but we nevertheless reach the issue.

[13] At the hearing on the motion in limine, Schweitzer apparently moved for leave to amend his complaint to add the allegation as one of the grounds for rescission, but the court denied the motion to amend because it was untimely. On appeal, Schweitzer asserts the court should

■ A motion in limine, which is a commonly used tool brought at the beginning of trial when evidentiary issues are anticipated by the parties, is designed to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. (*People v. Morris* (1991) 53 Cal.3d 152, 188 [279 Cal.Rptr. 720, 807 P.2d 949], disapproved on another ground by *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588].) It serves the same function as a "motion to exclude" under Evidence Code section 353, subdivision (a) by allowing the trial court to rule on a specific objection to particular evidence in advance of its introduction. (*Morris*, at p. 188.)

■ Here, the court granted the motion because it concluded the alleged violation of section 1695.16 was not a claim raised by Schweitzer's complaint. It is axiomatic that "[t]he pleadings establish the scope of an action and, absent an amendment to the pleadings, parties cannot introduce evidence about issues outside the pleadings." (*Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.* (2005) 130 Cal.App.4th 1078, 1091 [31 Cal.Rptr.3d 43].) When evidence is not pertinent to the issues raised by the pleadings, the evidence is irrelevant and it is proper to preclude the introduction of such evidence. (*Page v. Page* (1962) 199 Cal.App.2d 527, 532–533 [18 Cal.Rptr. 897].) The complaint specifically alleged the contract was "in violation of Civil Code §§ 1695.2, 1695.3, 1695.5, 1695.6, 1695.13, and 1695.17." Because there was no allegation the contract violated section 1695.16, any evidence on that issue was outside of the scope of the complaint and was properly excluded.

Schweitzer argues that under Code of Civil Procedure section 469, which provides that a variance between the issues raised by the pleadings and the proof at trial will not be deemed material absent prejudice to the opposing party, his failure to specifically plead section 1695.16 should be deemed immaterial. Schweitzer misunderstands the operation of that section. Code of Civil Procedure section 469 merely precludes a party from complaining about a variance between the pleadings and the proof at trial for the first time on appeal *when there was no objection lodged at trial* (see *Wishart v. Claudio* (1962) 207 Cal.App.2d 151, 154 [24 Cal.Rptr. 398]), but when a proper objection *is* interposed at trial "the evidence . . . should [be] excluded by the court." (*Fernandez v. Western Fuse & Explosives Co.* (1917) 34 Cal.App. 420, 423 [167 P. 900].) Here, Westminster's timely and specific objection renders Code of Civil Procedure section 469 inapplicable.

---

have granted him leave to amend. However, his brief makes no effort to cite any law or facts suggesting the ruling was an abuse of discretion, and we deem the contention abandoned. (See fn. 12, *ante.*)

## DISPOSITION

The judgment is reversed, except insofar as the court denied Schweitzer's motion for leave to amend and granted defendants' motion in limine on the section 1695.16 claim, and the order awarding attorney fees is vacated. On remand, the court shall enter judgment in favor of defendants. Defendants are entitled to costs on appeal.

Nares, Acting P. J., and McIntyre, J., concurred.

The petition of appellant Ingo Schweitzer for review by the Supreme Court was denied March 26, 2008, S160152.