Filed 7/2/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SHARON BROWN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>KAREN SMITH, as Director, etc., et al.,<br><br>    Defendants and Respondents. | B279936<br><br>(Los Angeles County<br>Super. Ct. No. BC617766) |

APPEAL from an order of dismissal of the Superior Court of Los Angeles County.  Gregory W. Alarcon, Judge.  Affirmed.

Law Offices of T. Matthew Phillips and T. Matthew Phillips for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Richard T. Waldow, Jonathan E. Rich and Jacquelyn Y. Young, Deputy Attorneys General, for Defendants and Respondents.

\* \* \* \* \* \* \*

**SUMMARY**

In 1890, the California Supreme Court rejected a constitutional challenge to a "vaccination act" that required schools to exclude any child who had not been vaccinated against small-pox.  (*Abeel v. Clark* (1890) 84 Cal. 226, 227-228, 230 (*Abeel*).)  In dismissing the suggestion that the act was "not within the scope of a police regulation," the court observed that, "[w]hile vaccination may not be the best and safest preventive possible, experience and observation . . . dating from the year 1796 . . . have proved it to be the best method known to medical science to lessen the liability to infection with the disease."  (*Id.* at p. 230.)  That being so, "it was for the legislature to determine whether the scholars of the public schools should be subjected to it, and we think it was justified in deeming it a necessary and salutary burden to impose upon that general class."  (*Ibid.*)

More than 125 years have passed since *Abeel*, during which many federal and state cases, beginning with the high court's decision in *Jacobson v. Massachusetts* (1905) 197 U.S. 11 (*Jacobson*), have upheld, against various constitutional challenges, laws requiring immunization against various diseases.  This is another such case, with a variation on the theme but with the same result.

We affirm the trial court's order dismissing plaintiffs' challenge to an amendment to California law that eliminated the previously existing "personal beliefs" exemption from mandatory immunization requirements for school children.

**FACTS**

Plaintiffs Sharon Brown, Sarah Lucas, Dawnielle Selden, Serge Eustache, Tricia Eustache, and Nikki Jencen filed this lawsuit, seeking to invalidate amendments to California's public

health laws governing immunization requirements against childhood diseases.  These legislative changes were made by Senate Bill No. 277, approved by the Governor on June 30, 2015, effective January 1, 2016.  (Stats. 2015, ch. 35.)

Senate Bill No. 277 eliminated the personal beliefs exemption from the requirement that children receive vaccines for specified infectious diseases before being admitted to any public or private elementary or secondary school, day care center or the like.[1]  (Sen. Bill No. 277, § 1.)  In addition to a medical exemption,[2] Senate Bill No. 277 contains exemptions for pupils in

---

[1]     The childhood diseases specified are diphtheria, hepatitis B, haemophilus influenzae type b, measles, mumps, pertussis (whooping cough), poliomyelitis, rubella, tetanus, and varicella (chickenpox).  (Health & Saf. Code, § 120325, subd. (a)(1)-(10).)  The list also includes "[a]ny other disease deemed appropriate by the department, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the United States Department of Health and Human Services, the American Academy of Pediatrics, and the American Academy of Family Physicians."  (*Id.,* subd. (a)(11).)  As to the last item, immunization may be mandated before a pupil's first admission to any school or child care center only if exemptions are allowed for both medical reasons and personal beliefs.  (§ 120338.)

[2]     The medical exemption, as amended by Senate Bill No. 277, states:  "If the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances, including, but not limited to, family medical history, for which the physician does not recommend immunization, that child shall be exempt

a home-based private school or independent study program who do not receive classroom-based instruction (Health & Saf. Code, § 120335, subd. (f)),[3] and for pupils previously allowed a personal beliefs exemption, until they enroll in the next grade span (*id.*, subd. (g)(1)). Grade spans are "[b]irth to preschool," "[k]indergarten and grades 1 to 6," and "[g]rades 7 to 12." (§ 120335, subd. (g)(2).) Also, pupils who qualify for an individualized education program are allowed access to any special education and related services required by that program. (§ 120335, subd. (h).) Otherwise, as of July 1, 2016, no pupil may be unconditionally admitted for the first time, or admitted or advanced to seventh grade level, unless immunized as required. (§ 120335, subd. (g)(3).)

The legislative history of Senate Bill No. 277 includes an extensive analysis of the bill, the reasons the authors gave for proposing the bill, the diseases that vaccines prevent and their health risks to children, the legal considerations, and the support for and opposition to the bill. (E.g., Assem. Com. on Health, Analysis of Sen. Bill No. 277 (2015-2016 Reg. Sess.) as amended May 7, 2015, pp. 1-16; *id.* at p. 4 ["All of the diseases for which California requires school vaccinations are very serious conditions that pose very real health risks to children."].)

Among many other things, the report from the Assembly Committee on Health discusses the protective effect of community immunity, which "wanes as large numbers of children

from the [immunization] requirements . . . to the extent indicated by the physician's statement." (§ 120370, subd. (a).)

[3]     Further statutory citations are to the Health and Safety Code, unless otherwise specified.

4

do not receive some or all of the required vaccinations, resulting in the reemergence of vaccine preventable diseases in the U.S." (Assem. Com. on Health, Analysis of Sen. Bill No. 277, *supra*, p. 5.) The report explains that the vaccination rate in various communities "varies widely across the state," and some areas "become more susceptible to an outbreak than the state's overall vaccination levels may suggest," making it "difficult to control the spread of disease and mak[ing] us vulnerable to having the virus re-establish itself." (*Ibid*.) Further, studies have found that "when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease," and one analysis "found that more than a quarter of schools in California have measles-immunization rates below the 92-94% recommended by the CDC [(Center for Disease Control)]." (*Ibid*.) The report describes the December 2014 outbreak of measles linked to Disneyland (131 confirmed cases); states that according to the CDC, "measles is one of the first diseases to reappear when vaccination coverage rates fall"; and states that in 2014, 600 cases were reported to the CDC, the highest in many years. (*Ibid*.)

As indicated above, Senate Bill No. 277 was approved in June 2015 and became effective January 1, 2016. Plaintiffs filed their complaint on April 22, 2016. The operative second amended complaint sought to "halt enforcement" of Senate Bill No. 277. The complaint alleged Senate Bill No. 277 violated four provisions of the California Constitution: the free exercise of religion (art. I, § 4); the right to attend school (art. IX, § 5); equal protection (art. I, § 7) (alleging "discrimination based on vaccination status"); and due process (art. I, § 7) (alleging Senate Bill No. 277 was "void for vagueness"). The complaint also

5

alleged a violation of section 24175, subdivision (a) (requiring informed consent for medical experiments).

The complaint described the plaintiffs, all of whom are parents with "sincerely held philosophic, conscientious, and religious objections to state-mandated immunization." (Italics omitted.) The defendant named in the operative complaint is Karen Smith, sued in her capacity as director of the California Department of Public Health. The 38-page complaint consists principally of argument, alleging, for example, that plaintiffs "dispute the central hypothesis that drives vaccine theory," which "has never been proven and Plaintiffs are eager to disprove it"; that "[v]accines kill and maim children"; and that Senate Bill No. 277 "is a totalitarian mandate that expects parents to merrily sacrifice their children for the greater good." We will describe the complaint's allegations further as necessary in our discussion of plaintiffs' contentions on appeal.

Defendants demurred to the complaint, plaintiffs opposed, and the trial court sustained defendants' demurrer without leave to amend. The court entered an order dismissing plaintiffs' complaint with prejudice and plaintiffs appealed.

A month after filing plaintiffs' opening brief, counsel filed a letter asking us to consider as "new authority[]" (Cal. Rules of Court, rule 8.254) the addition in July 2017 of a chemical to California's list of chemicals known to cause cancer. Plaintiffs contend they have "seen evidence" that the chemical contaminates vaccines. We deny the request, as it is both untimely and irrelevant to any issue on appeal.

After briefing was complete, counsel filed a motion to withdraw as attorney of record for plaintiffs, citing failure to pay fees and an irreparable breakdown of the attorney-client

6

relationship.  We granted the motion.  Other counsel substituted in as counsel of record.

## DISCUSSION

### 1.     Standard of Review

A demurrer tests the legal sufficiency of the complaint.  We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action.  For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law.  We also consider matters that may be judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "[C]ourts may—and, indeed, must—disregard allegations that are contrary to judicially noticed facts and documents."  (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1338.)  "[W]here an allegation is contrary to law or to a fact of which a court may take judicial notice, it is to be treated as a nullity."  (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm."  (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.)  Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action.  (*Ibid.*)

### 2.     Contentions and Conclusions

#### a.     Judicial notice

Along with their respondents' brief, defendants filed a motion requesting judicial notice of several categories of documents.  These include documents from the legislative history

of Senate Bill No. 277; documents published by the World Health Organization, the CDC, the American Academy of Pediatrics, and the United States Department of Health and Human Services, plus other materials addressing the safety and effectiveness of vaccinations; and federal and state trial court decisions rejecting challenges to Senate Bill No. 277.  In addition, defendants requested we take judicial notice "of the safety and effectiveness of vaccinations in preventing the spread of dangerous communicable diseases, a fact that is commonly known and accepted in the scientific community and the general public."

We grant defendants' request for judicial notice.

Plaintiffs do not object to the legislative history materials, but object to the materials on vaccination as hearsay, inadmissible opinion evidence, and "government propaganda." Plaintiffs further argue that we cannot take judicial notice of the safety and effectiveness of vaccines.  They contend the proposition that " 'protection of school children against crippling and deadly diseases by vaccinations is done effectively and safely' " is not common knowledge, and is the subject of reasonable dispute.  But they cite no authority that supports their contention.  The authorities are to the contrary.

More than 90 years ago, a California court observed that: "Where the issue pertains to medical or surgical treatment, the nature, effect, and result of which are the subjects of common knowledge, such matters are within the rule of judicial knowledge.  As for instance, the court will take judicial notice of the nature, purpose, and effects of vaccination." (*Southern California Edison Co. v. Industrial Accident Com*. (1925) 75 Cal.App. 709, 715.)

Our courts have also pointed out we may take judicial notice of scientific facts. (See *McAllister v. Workmen's Compensation Appeals Board* (1968) 69 Cal.2d 408, 414 ["Matters of scientific certainty are subject to judicial notice."]; *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1145 ["Judicial notice under Evidence Code section 452, subdivision (h) is intended to cover facts which are not reasonably subject to dispute and are easily verified. These include, for example, facts which are widely accepted as established by experts and specialists in the natural, physical, and social sciences which can be verified by reference to treatises, encyclopedias, almanacs and the like or by persons learned in the subject matter."].)

Accordingly, we conclude judicial notice of the safety and effectiveness of vaccinations is proper.[4]

b.      **The merits of plaintiffs' legal claims**

Plaintiffs repeatedly cite and mischaracterize the holding of *Bruesewitz v. Wyeth LLC* (2011) 562 U.S. 223 (*Bruesewitz*). *Bruesewitz* held that "the National Childhood Vaccine Injury Act [(42 U.S.C. §§ 300aa-10 et seq.)] pre-empts all design-defect claims against vaccine manufacturers brought by plaintiffs who seek compensation for injury or death caused by vaccine side effects." (*Bruesewitz,* at p. 243.) From this, plaintiffs conclude that "all vaccines, as a matter of law, are 'unavoidably unsafe' and 'unavoidably defective,' " "cause indiscriminate death and

---

[4]      Our ruling likewise disposes of plaintiffs' first claim in their opening brief: that the trial court erred by not "presuming the truth" of plaintiffs' allegation "that all vaccines are unavoidably unsafe." As we have observed in the text, courts may disregard allegations that are contrary to judicially noticed facts.

injury," and therefore "states *must* lack the power to mandate" their use.

Plaintiffs are, of course, quite wrong.  No doubt injuries and deaths have been caused by vaccines, and no doubt there are cases of "unavoidable, adverse side effects."  (*Bruesewitz, supra,* 562 U.S. at p. 230.)  This does not change the pertinent point:  as *Bruesewitz* tells us, "the elimination of communicable diseases through vaccination became 'one of the greatest achievements' of public health in the 20th century."  (*Id.* at p. 226; see *id.* at p. 245 (conc. opn. of Breyer, J.) ["routine vaccination is 'one of the most spectacularly effective public health initiatives this country has ever undertaken' "].)  But "these gains are fragile" and "[e]ven a brief period when vaccination programs are disrupted can lead to children's deaths."  (*Id.* at p. 246 (conc. opn. of Breyer, J.).)

In short, it has been settled since 1905 in *Jacobson, supra,* 197 U.S. 11, "that it is within the police power of a State to provide for compulsory vaccination."  (*Zucht v. King* (1922) 260 U.S. 174, 176; see also *French v. Davidson* (1904) 143 Cal. 658, 662 ["When we have determined that the act is within the police power of the state, nothing further need be said.  The rest is to be left to the discretion of the law-making power.  It is for that power to say whether vaccination shall be had as to all school children who have not been vaccinated all the time . . . ."]; *ibid.* [" 'Special burdens are often necessary for general benefits.' "].)  Nothing in *Bruesewitz* changes any of these principles.

We address plaintiffs' causes of action in the order asserted in the complaint.

###### i. The free exercise of religion
###### (Cal. Const., art. I, § 4)

Plaintiffs cite no pertinent authority for their assertion that Senate Bill No. 277 "violates freedom of religion." It does not.

As a preliminary matter, we note that three of the six plaintiffs describe themselves as Christians, two of whom are opposed to the use of fetal cells in vaccines; the third has children who have had most of the recommended vaccinations. The other three plaintiffs allege nothing about any religious basis for their objection to vaccination. A belief that is "philosophical and personal rather than religious . . . does not rise to the demands of the Religion Clauses." (*Wisconsin v. Yoder* (1972) 406 U.S. 205, 216 (*Yoder*).)

Setting that point aside, in *Phillips v. City of New York* (2d Cir. 2015) 775 F.3d 538 (*Phillips*), the court held that "mandatory vaccination as a condition for admission to school does not violate the Free Exercise Clause." (*Id.* at p. 543.) In *Phillips,* New York law required that students be immunized against various vaccine-preventable illnesses, and provided medical and religious exemptions. (*Id.* at p. 540.) *Phillips* further stated: "New York could constitutionally require that all children be vaccinated in order to attend public school. New York law goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs. [T]he State could bar [plaintiffs'] children from school altogether." (*Id.* at p. 543.)

*Phillips* relied on the high court's "persuasive dictum" in *Prince v. Massachusetts* (1944) 321 U.S. 158. In *Prince*, the court observed: "[T]he family itself is not beyond regulation in the public interest, as against a claim of religious liberty. [Citations.] And neither rights of religion nor rights of parenthood are beyond

limitation. . . . [The state's] authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." (*Prince,* at pp. 166-167, fn. omitted [upholding conviction for child labor law violation against a free exercise of religion claim].)

Even if we were to assume that laws requiring vaccination substantially burden the free exercise of religion and therefore merit strict scrutiny, plaintiffs' claim fails. (*Workman v. Mingo County Board of Education* (4th Cir. 2011) 419 Fed.Appx. 348, 353 [West Virginia's mandatory immunization program withstands strict scrutiny].) Citing *Jacobson* and *Prince*, *Workman* rejected the contention "that because West Virginia law requires vaccination against diseases that are not very prevalent, no compelling state interest can exist." (*Workman,* at p. 353.) "On the contrary, the state's wish to prevent the spread of communicable diseases clearly constitutes a compelling interest." (*Ibid.*, see *id.* at p. 354 [conclusion that mandatory vaccination as a condition of school admission does not unconstitutionally infringe the right to free exercise "is buttressed by the opinions of numerous federal and state courts that have reached similar conclusions in comparable cases," citing cases].)

We agree with these authorities, and plaintiffs point to no pertinent authority to the contrary. Plaintiffs cite *Yoder, supra,* 406 U.S. 205, but *Yoder* does not assist plaintiffs; it concerned compulsory school attendance, not immunization against

contagious diseases.  And, the court pointed out that the case was "not one in which any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred," and that a parent's power, "even when linked to a free exercise claim, may be subject to limitation under *Prince* if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens."  (*Id.* at pp. 230, 233-234.)  Accordingly, plaintiffs' free exercise claim has no merit.

### ii.     The right to attend school
### (Cal. Const., art. IX, § 5)

The California Constitution provides for "a system of common schools by which a free school shall be kept up and supported in each district . . . ."  (Cal. Const., art. IX, § 5.)  While education is not a fundamental right under the federal Constitution, our Supreme Court has held that education is a " 'fundamental interest.' "  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 608-609 (*Serrano*).)  *Serrano* struck down a public school financing scheme as violating equal protection guaranties "because it discriminated against a fundamental interest – education – on the basis of a suspect classification – district wealth – and could not be justified by a compelling state interest under the strict scrutiny test thus applicable."  (*Butt v. State of California* (1992) 4 Cal.4th 668, 682 [describing *Serrano*].)

Plaintiffs cite *Serrano* to support their claim that Senate Bill No. 277 violates their constitutional right to attend school, but fail to explain its application here.  There is no "suspect classification" underlying Senate Bill No. 277.  But even if we assume the strict scrutiny test should be applied to any law affecting the fundamental interest in education, Senate Bill

13

No. 277 would pass that test.  One court has already so held, and we agree with its analysis.  (*Whitlow v. Cal. Dept. of Education* (S.D.Cal. 2016) 203 F.Supp.3d 1079 (*Whitlow*) [denying motion to preliminarily enjoin the state from enforcing Sen. Bill No. 277].)

As *Whitlow* points out, federal and state courts, beginning with *Abeel*, have held "either explicitly or implicitly" that "society has a compelling interest in fighting the spread of contagious diseases through mandatory vaccination of school-aged children." (*Whitlow, supra,* 203 F.Supp.3d at pp. 1089-1090, citing cases.) That interest exists "regardless of the circumstances of the day, and is equally compelling whether it is being used to prevent outbreaks or eradicate diseases."  (*Id.* at p. 1090.)  As stated in the statute on immunization requirements, the state's objective is "the eventual achievement of total immunization of appropriate age groups against [specified] childhood diseases."  (§ 120325, subd. (a).)

Plaintiffs allege in their complaint that Senate Bill No. 277 is not narrowly tailored to meet the state's interest, because there are less restrictive alternatives (such as alternative means (unspecified) of immunization, and quarantine in the event of an outbreak of disease).  This argument fails, of course, as compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases.  As is noted in the legislative history, studies have found that "when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease," and community immunity wanes if large numbers of children do not receive required vaccinations. (Assem. Com. on Health, Analysis of Sen. Bill No. 277, *supra,* p. 5.)

14

In short, as we have already pointed out, states may impose vaccination requirements without providing religious exemptions. We agree with *Whitlow*'s conclusion: "The right of education, fundamental as it may be, is no more sacred than any of the other fundamental rights that have readily given way to a State's interest in protecting the health and safety of its citizens, and particularly, school children," and "removal of the [personal beliefs exemption] is necessary or narrowly drawn to serve the compelling objective of SB 277." (*Whitlow, supra,* 203 F.Supp.3d at p. 1091.)

### iii. Equal protection (Cal. Const., art. I, § 7)

In their complaint, plaintiffs alleged Senate Bill No. 277 violates the equal protection clause by discriminating "based on vaccination status." On appeal, plaintiffs tell us Senate Bill No. 277 also discriminates based on multiple other classifications, such as "home-based vs. classroom-based students," "medically exempt students vs. students without medical exemptions," children with individualized education plans and those without, and so on. Plaintiffs cite no authority suggesting that any of these classifications gives rise to equal protection concerns, and we are aware of none.

Consequently, we confine ourselves to pointing out that in 1904, our Supreme Court rejected a 14th Amendment challenge to the state's mandatory vaccination law, finding in it "no element of class legislation." (*French v. Davidson, supra,* 143 Cal. at p. 662.) The court observed: "It needs no argument to show that, when it comes to preventing the spread of contagious diseases, children attending school occupy a natural class by themselves, more liable to contagion, perhaps, than any other class that we can think of. This effort . . . was for the benefit and

15

protection of all the people . . . . It in no way interferes with the right of the child to attend school, provided the child complies with its provisions." (*Ibid.*)

The statutory classifications and exemptions plaintiffs dispute do not involve similarly situated children, or are otherwise entirely rational classifications. For a discussion delineating, and rejecting, equal protection claims based on these categories, see *Whitlow, supra,* 203 F.Supp.3d at pages 1087-1088.

### iv.   Due process
### (Cal. Const., art. I, § 7)

Next, plaintiffs contend Senate Bill No. 277 is void for vagueness under California's due process clause. Their argument is that the Legislature's goal – "[a] means for the eventual achievement of total immunization of appropriate age groups" against the specified childhood diseases – is unconstitutionally vague because "nobody knows what it means." Plaintiffs also contend the medical exemption requirements are unconstitutionally vague and "violative of due process."

We have no difficulty perceiving the legislative goal. Indeed, it is nothing new – the goal of "total immunization" has been stated in section 120325 since its passage in 1995, when the Legislature reorganized and clarified portions of the Health and Safety Code. (Sen. Bill No. 1360, Stats. 1995, ch. 415.) As for the claim of vagueness in the medical exemption, plaintiffs make no argument at all, simply stating in a single sentence that the requirements are vague. That does not constitute a proper appellate argument. Moreover, plaintiffs offer no authorities describing the principles of vagueness in constitutional law, much less how those principles could apply to their claims. They

16

do not.  "A statute is void for vagueness if persons of common intelligence must guess as to its meaning and differ as to its applications."  (*Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1206.)  The medical exception (quoted in fn. 2, *ante*) on its face is "sufficiently clear to give fair warning of the . . . required conduct."  (*Schweitzer,* at p. 1206.)

### v.      Section 24175, subdivision (a)

Finally, plaintiffs alleged a violation of section 24175, subdivision (a).  That statute provides that no one may be subjected to a medical experiment without his or her informed consent.  (§ 24175, subd. (a).)  A medical experiment includes "[t]he . . . penetration . . . of tissues of a human subject . . . in the practice . . . of medicine in a manner not reasonably related to maintaining or improving the health of the subject or otherwise directly benefiting the subject."  (§ 24174, subd. (a).)  Plaintiffs tell us that "all vaccines are 'medical experiments.' "

This claim is patently erroneous.  The applicable authorities – legal and scientific – clearly show that immunization is reasonably related to maintaining the health of the subject of the immunization as well as the public health.

### c.      No leave to amend

Plaintiffs state – in their reply brief – that they should be granted leave to amend.  That request is untimely as it was not made in their opening brief, but in any event plaintiffs do not explain how they could amend the complaint to cure its defects.  The trial court did not err in sustaining the demurrer without leave to amend.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P .J.

ROGAN, J.[*]

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18