Filed 3/6/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MATTHEW M., a Person Coming Under the Juvenile Court Law. | B319258 |
| | (Los Angeles County Super. Ct. No. 20CCJP06478A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| CHRISTINA P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Juvenile Court Referee. Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

_____

In early November 2021, over the objection of 12-year-old Matthew M.'s mother, the juvenile court authorized the Los Angeles County Department of Children and Family Services or the congregate care facility where Matthew was placed to vaccinate the child against the SARS-CoV-2 virus once his pediatrician approved. Several weeks later Matthew's mother asked the court to rescind its order, explaining in greater detail her religious objection to Matthew receiving the COVID-19 vaccine. After an evidentiary hearing the juvenile court denied the petition, finding insufficient evidence it was in the child's best interest not to be vaccinated. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Sustained Dependency Petitions and Matthew's Placement at Five Acres*

Matthew was detained from his father, Gabino M., and released to his mother, Christina P., in early December 2020 after the Department filed a petition pursuant to Welfare and Institutions Code section 300, subdivisions (a) (physical harm inflicted nonaccidentally) and (b)(1) (failure to protect),[1] alleging the child had been harmed or was at substantial risk of serious physical harm because of his father's physical abuse. The petition also alleged that Matthew had demonstrated behavioral, mental and emotional problems; had been diagnosed with bipolar disorder, mood disorder and depression; and had been

---

[1] Statutory references are to this code.

2

hospitalized in the past for psychiatric issues. It further alleged that Gabino was limited in his ability to provide Matthew with appropriate care and supervision, which placed the child at substantial risk of serious physical harm. The juvenile court sustained the petition on January 11, 2021, declared Matthew a dependent child of the court, removed Matthew from Gabino's care and custody and ordered him released to Christina under the supervision of the Department with family maintenance and family preservation services.

On February 22, 2021 the Department filed a petition pursuant to section 342 after Matthew had again been hospitalized for psychiatric issues. The petition alleged, pursuant to section 300, subdivision (b)(1), that, in addition to his diagnoses of bipolar disorder, mood disorder and depression, as set forth in the original section 300 petition, Matthew had suicidal and homicidal ideation, poor impulse control and a recent diagnosis of disruptive mood dysregulation, attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD), and that Christina was unable to provide appropriate parental care and supervision. In particular, the petition alleged Christina was unwilling to allow Matthew to return to her home following his hospitalization on February 12, 2021. The court sustained the new petition on April 29, 2021, removed Matthew from Christina's care and ordered the Department to provide family reunification services for Christina.

## 2. *The Six-month Review Hearing*

The Department on October 28, 2021 filed its status review report for the six-month review hearing (§ 366.21, subd. (e)). The Department explained that since the April 2021 section 342 disposition hearing Matthew had been cared for at the Five Acres short-term residential therapeutic program (STRTP), a group home, where he "had challenges in managing his aggression and other negative behaviors." Matthew's then-current diagnosis was disruptive mood dysregulation disorder. He was residing in a Five Acres cottage and receiving "daily milieu therapy," as well as participating in group therapy and weekly individual counseling to address antisocial behaviors. His medication included Vyvanse (lisdexamfetamine), Lexapro (escitalopram) and clonidine, managed and evaluated by a psychiatrist who saw Matthew once a month. The report stated Matthew had twice tested negative for COVID-19. There was no mention of Matthew's possible vaccination in the report. The Department's report recommended that Matthew remain a dependent of the court in his current placement, with reunification services continuing for Christina until the 12-month review hearing.

At the section 366.21, subdivision (e), hearing on November 4, 2021, conducted remotely via WebEx and presided over by a judicial court referee,[2] Christina submitted on the Department's recommendation to continue dependency jurisdiction, including out-of-home placement, and family

---

[2] As is customary, when filing both the section 300 and section 342 petitions, the Department stated it was not stipulating to a juvenile court referee acting as a temporary judge and that it reserved its right to petition for rehearing before a judge of the juvenile court pursuant to section 252.

4

reunification services; but her counsel stated Christina had two concerns. First, Five Acres had made it difficult for Christina to remain involved in Matthew's educational and medical needs, and Christina was concerned Matthew was not receiving appropriate care at the facility. Second, the Department's social worker had told Christina, because he recently turned 12 years old, Matthew needed to receive the COVID-19 vaccine.[3] Counsel requested that the court "order the child not be required to receive the vaccine, not only due to religious exemption but, more importantly, due to the many side effects the child has to medication." The court asked, "What is the religious exemption you're reporting?" Counsel responded that Christina had not provided her with that information and suggested the court ask Christina directly. The court did, and Christina stated, "Christian. We are Christian." The court replied, "That is not an appropriate exemption" and noted there was extensive case authority permitting the juvenile court to order vaccinations, citing as an example *In re S.P.* (2020) 53 Cal.App.5th 13.

After discussing Christina's concerns about Five Acres and a possible section 388 petition to change his placement or return him to Christina's custody, Matthew's counsel submitted the

---

[3] The United States Food and Drug Administration (FDA) did not authorize the emergency use of the Pfizer-BioNTech vaccine for the prevention of COVID-19 to include children younger than 12 years old until October 29, 2021. (FDA, Press Release, *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 Through 11 Years of Age* (Oct. 29, 2021) <https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age> [as of March 6, 2023], archived at <https://perma.cc/B92N-6LRT>.)

issue of vaccination to the court, stating, "I had no information about that before we were on the record." The Department asked the court to follow the guidelines of the Centers for Disease Control and Prevention (CDC) regarding vaccination unless Matthew's doctor advised otherwise.

The court authorized vaccination of Matthew in accordance with CDC guidelines, finding no evidence had been presented of an appropriate religious exemption, but required the Department to ensure that Five Acres consulted with Matthew's pediatrician and obtained approval that none of Matthew's medications or his medical condition would interfere with, or impact his ability to receive, the vaccination.

Christina neither applied for a de novo rehearing of the juvenile court referee's order under sections 252 and 254 and California Rules of Court, rule 5.542, nor appealed the order to this court under section 395, subdivision (a)(2).

3. *Christina's Section 388 Petition*

On November 30, 2021 Christina filed a section 388 request to change court order, asking the court to revoke its November 4, 2021 authorization to vaccinate Matthew against COVID-19. As new information or change of circumstance Christina attached a letter she wrote on behalf of Matthew describing Matthew's (and Christina's) strongly held Christian beliefs on which their objection to vaccination was based. The letter stated the COVID-19 vaccines had used fetal cells during their early development and explained, "This mechanism for altering my God given body is the equivalent of a prohibited 'unclean food' that causes harm to my conscience. Covid-19 vaccines are to me unclean."

Christina's petition also stated, "The child is already struggling quite a bit with his mental and emotional needs[,] and

6

we do believe that giving him this vaccine against his wishes would be further detrimental to his mental health." The single-page document attached to the petition included a short statement from an ordained minister verifying that Matthew was a "born again Christian and member of our Church" and stating, "[W]e believe our body is Temple of Holy Spirit and should not be defiled."

On December 2, 2021 the court ordered the Department to respond to Christina's petition, set an evidentiary hearing for January 14, 2022 and stayed the vaccination order. The Department in a January 5, 2022 filing recommended the court allow Matthew to be vaccinated with the Pfizer-BioNTech COVID-19 vaccine, noting the FDA and CDC had approved that vaccine for 12 year olds. In support of its recommendation the Department stated there was a spike in COVID-19 infections at that time and vaccinations were considered ordinary treatment for youths in foster care for which their caregivers could provide consent without the need of a court order, citing, in part, section 16519.57. As it related more specifically to Matthew, the Department explained he was not only placed in a STRTP where other foster youth were living but also attended school with hundreds of other children who were vulnerable to the virus. The Department attached to its report a letter from Dr. Jill Marie Lekovic, who saw Matthew on December 2, 2021 and reported "There is no known contraindication to Matthew getting the COVID vaccine."

The section 388 evidentiary hearing was continued from January 14, 2022 to February 4, 2022 because Christina was ill and unable to appear and again to March 11, 2022 after Christina successfully moved to replace her appointed counsel.

7

At her new counsel's request, the court ordered the Department to have Matthew available to testify at the March 11, 2022 hearing.

At the hearing on March 11, 2022 the court admitted into evidence Christina's petition and attachment and the Department's response with attachments.[4] Christina then testified she did not think it necessary to vaccinate Matthew because "he already had COVID and he was fine. It was like a cold." In addition, Christina continued, "Everybody is vaccinated where he's at." Christina also explained that Matthew now had tardive dyskinesia as a result of antipsychotic medication he had been taking (Seroquel) and, in general, "a delicate body, a delicate brain." She expressed concern about the vaccine's possible harmful impact, "especially in young kids," given the absence of long-term studies of the vaccine's side effects.

Christina did not address her religious objection to the vaccine in her testimony; and her counsel, in arguing that the court find it in Matthew's best interest to allow his mother to make the decision, discussed only Christina's health-related concerns. Counsel also suggested masking and frequent testing would adequately protect Matthew and the other residents and staff at Five Acres.

Matthew did not testify at the hearing. However, his counsel advised the court that Matthew "wanted Your Honor to know that he would like for the court to make this decision for him."

---

[4]     The court also admitted a last minute information report dated February 4, 2022, which included more recent information concerning Matthew's placement at Five Acres but did not directly relate to the issue of vaccination.

The Department argued it did not appear that Matthew shared his mother's religious objections to vaccination, asserted Christina's concerns about Matthew's health were speculative, and reminded the court that Dr. Lekovic stated there were no known contraindications to Matthew's vaccination.

The court denied the petition, finding insufficient evidence of changed circumstances and insufficient evidence it was in the child's best interest not to be vaccinated. Explaining its ruling the court stated, "In looking at the document of the motion that the mother has filed, there is absolutely no medical evidence and no sincerely held religious belief that justifies avoiding the child, who is in an approved congregate care setting, to not [*sic*] be vaccinated. . . . There is no evidence that the vaccination that would be implemented for Matthew is one that's using aborted fetal cells. It's just a statement by some ordained minister. There's no scientific evidence." As for Christina's health-related concerns, the court emphasized Dr. Lekovic's letter and stated, "Mother's statements are simply statements that I believe are wrought with fear, panic and lack of true medical evidence." The court acknowledged side effects had been reported as a result of vaccinating children but concluded "those side effects are outweighed by the benefits that have been indicated to have shown to be true as a result of this vaccine being implemented."

Christina filed a timely notice of appeal from the March 11, 2022 order denying her section 388 petition.[5]

---

[5]     In response to an inquiry from this court, the Department on February 1, 2023 reported that, to its knowledge, Matthew had not yet received any vaccinations or boosters for the COVID-19 virus or any of its variants. According to a January 23, 2023 last minute information report, filed by the

# DISCUSSION

1. *Section 388: Governing Law and Standard of Review*

Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122; see Cal. Rules of Court, rule 5.570(e); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information'"].) "'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' [Citation.] '[T]he change in circumstances must be substantial.'" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; accord, *Malick T.*, at p. 1122.)

If the juvenile court has ruled the moving party failed to carry his or her initial burden to demonstrate new evidence or change of circumstance, the first step of the analysis, the question for the reviewing court is whether that finding is erroneous as a matter of law. (See *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769 [where

---

Department for a section 342 jurisdiction/disposition hearing scheduled for February 3, 2023, Matthew tested positive for COVID-19 in December 2022. We grant the Department's February 1, 2023 request to take judicial notice of several minute orders reflecting Matthew's custodial status and the January 23, 2023 last minute information report.

10

the issue on appeal turns on a failure of proof at trial, "the question for the reviewing court [becomes] "'whether the evidence compels a finding in favor of the appellant as a matter of law'"']; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156 [same]; see also *In re R.V.* (2015) 61 Cal.4th 181, 201 [where a party fails to carry its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].)

We review the court's best interest determination, the second step, for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination.  (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 318; *In re I.B.* (2020) 53 Cal.App.5th 133, 152.)  We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court. (*Stephanie M.*, at p. 319.)  We ask only whether the juvenile court abused its discretion with respect to the order it made.  (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1305.)

2.  *The Juvenile Court Did Not Err as a Matter of Law and, in Any Event, Did Not Abuse Its Discretion*

a.  *New evidence*

"'[T]he term "new evidence" in section 388 means material evidence that, with due diligence, the party could not have presented at the dependency proceeding at which the order, sought to be modified or set aside, was entered.'" (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1093; accord, *In re H.S.* (2010) 188 Cal.App.4th 103, 105, 108-109 [because "the term 'new evidence' in section 388 must be construed to include the three requirements of new evidence, reasonable diligence, and

11

materiality," new expert's opinion based on evidence that was previously available does not constitute "new evidence" within the meaning of section 388]; see also *In re A.A.* (2012) 203 Cal.App.4th 597, 612 ["[t]he change in circumstances or new evidence must be of such significant nature that it requires a setting aside or modification of the challenged order"].)

Christina's religious objection to Matthew's vaccination was initially voiced at the six-month review hearing after she had been told by a social worker prior to the hearing that Matthew needed to be vaccinated once he turned 12 years old. Christina's explanation of the biblical and factual bases for her objection, set forth in the letter attached to her petition, did not constitute "new evidence" within the meaning of section 388. That information was readily available to Christina prior to the six-month review hearing. Nonetheless, Christina on appeal argues she could not have known the court would require supporting evidence, rather than accepting her statement of belief, and a section 388 petition, therefore, was the appropriate procedural device to present the issue. She also notes the Department's letter to foster caregivers regarding vaccinations, which was attached as an exhibit to the Department's response to the section 388 petition, after stating caregivers were authorized to consent to the COVID-19 vaccine, indicated parents could object to vaccination by filing a section 388 petition.

Christina's argument for an expansive interpretation of the new evidence requirement is not persuasive. As the court of appeal explained in *In re H.S.*, *supra*, 188 Cal.App.4th 105, the public policy that precludes reopening a case because a party has identified evidence that could have been presented, but was not, "applies even more forcefully to dependency cases, where delay is

antithetical to the primary focus of dependency proceedings, the best interests of the child." (*Id.* at p. 108.) Indeed, a strict application of section 388's new evidence requirement is particularly appropriate here, where, because the six-month review hearing was conducted by a juvenile court referee, Christina had the right to seek an immediate rehearing de novo and present to a judge of the juvenile court any evidence she wished in support of her religious objections and health-related concerns about vaccination. (See §§ 252, 254.) Having elected not to do so, Christina was obligated to comply with the substantive requirements of the alternate procedure she chose to use.

#### b. *Best interest*

Even if we were to agree that Christina's petition presented new evidence within the meaning of section 388, the juvenile court acted well within its discretion in finding modification of its order authorizing Matthew's vaccination with the Pfizer-BioNTech COVID-19 vaccine was not in the child's best interest. Christina disputes that conclusion, arguing the court failed to accord the required level of deference to her religious choices as Matthew's parent or to respect her nonreligious concerns about the possible impact of the vaccine on his health. Neither contention has merit.

When a child has been declared a dependent of the juvenile court, the court is expressly authorized to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child, including medical treatment." (§ 362, subd. (a); see § 369, subd. (c) [authorizing the court to order medical, surgical, dental or other remedial care or treatment for a dependent child].) These provisions and others in

the Welfare and Institutions Code "have been broadly interpreted to authorize a wide variety of remedial orders intended to protect the safety and well-being of dependent children." (*In re Carmen M.* (2006) 141 Cal.App.4th 478, 486; accord, *In re S.P.*, *supra*, 53 Cal.App.5th at p. 17 ["'[P]rovisions of the Welfare and Institutions Code illustrate the juvenile court's authority to make all reasonable orders relating to medical treatment for a dependent child. *No statute restricts that authority*'"]; *In re Christopher I.* (2003) 106 Cal.App.4th 533, 555; see *In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104 [juvenile court has broad discretion to determine what would best serve dependent child's interests and enter appropriate orders to protect the child].) The court's authority unquestionably extends to ordering approved vaccinations for a child over a parent's objection. (*In re S.P.*, at pp. 14-15.)

Christina contends her religious objection to vaccination, predicated on her belief the Pfizer-BioNTech COVID-19 vaccine used "fetal cells" during its early development, justified a finding that vaccinating Matthew was not in the child's best interest. Christina's religious beliefs were certainly entitled to some consideration in the juvenile court's evaluation of the issue, even though, as the court noted, the factual basis for her objection to the Pfizer vaccine was not supported by any evidence.[6] (Cf.

_____

[6] We grant Christina's November 27, 2022 request for judicial notice of the following statement from the *per curium* opinion in *We The Patriots USA, Inc. v. Hochul* (2d Cir. 2021) 17 F.4th 266, 276-277: "[I]n the 1970s and 1980s, cell lines were derived from fetal cells obtained from elective abortions or miscarriages. These cell lines have since been used in the development of various vaccines. They were used for testing in the research and development phase of the mRNA (Pfizer-

14

§ 16509 ["[c]ultural and religious child-rearing practices and beliefs which differ from general community standards shall not in themselves create a need for child welfare services unless the practices present a specific danger to the physical or emotional safety of the child"].)  But, contrary to Christina's argument, those beliefs are not outcome determinative.  (See *Prince v. Massachusetts* (1944) 321 U.S. 158, 166-167 [64 S.Ct. 438] [A parent "cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds.  The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to

---

BioNTech and Moderna) COVID-19 vaccines and in the production of the Johnson & Johnson COVID-19 vaccines.  [Fns. omitted.]"

As this statement indicates, fetal cell lines, not fetal cells, were used in the development of the Pfizer-BioNTech vaccine.  The Los Angeles County Department of Public Health in its information sheet on COVID-19 vaccines and fetal cell lines—the authority cited by the *We The Patriots* court—explained, "Fetal cell lines are different from fetal cells and fetal tissues.  Fetal cells and fetal tissue come directly from a fetus.  Fetal cell lines are grown in a laboratory from cells that originally came from fetuses.  **None of the COVID-19 vaccines available for use in the United States contain fetal cells or fetal tissue.**"  The information sheet further explained, with respect to the Pfizer and Moderna vaccines, "A fetal cell line was used for laboratory testing before these vaccines were tested on people." (Los Angeles County Dept. of Pub. Health, *COVID-19 Vaccine and Fetal Cell Lines* (Dec. 5, 2022) <http://publichealth.lacounty.gov/media/coronavirus/docs/vaccine/VaccineDevelopment_FetalCellLines.pdf> [as of March 6, 2023], archived at< https://perma.cc/M3C4-8VAC>.)

ill health or death," fn. omitted]; *Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1143 ["it has been settled since 1905 . . . 'that it is within the police power of a State to provide for compulsory vaccination'"]; see also *Walker v. Superior Court* (1988) 47 Cal.3d 112, 139 [although the First Amendment "absolutely protects religious belief, religiously motivated conduct 'remains subject to regulation for the protection of society'"]; *People v. Woody* (1964) 61 Cal.2d 716, 718 [religious practices may be abridged "upon a demonstration that some compelling state interest outweighs the defendants' interests in religious freedom"].)

Here, notwithstanding Christina's claim in her section 388 petition that Matthew shared her objection to receiving the COVID-19 vaccine due to his religious beliefs and her assertion that vaccinating him against his wishes would be detrimental to his mental health, Matthew's counsel made clear at the evidentiary hearing, after speaking to Matthew, that the child wanted the court, not his mother, to make the decision. And to reiterate, it was, in any event, well within the authority of the juvenile court to allow the vaccination of a dependent child notwithstanding parental objection if the evidence before the court, including the approval of the child's doctor, supported the decision to do so. (*In re S.P.*, *supra*, 53 Cal.App.5th at pp. 17-18.)

The record at the section 388 hearing amply justified the court's conclusion it would not be in Matthew's best interest to revoke the vaccination order despite Christina's unsupported concerns about possible adverse side effects. As established by the Department's response to Christina's petition, COVID-19 was one of the 10 leading causes of death for children as of October 2021, COVID-19 infections were then increasing, Matthew was in

16

contact with multiple individuals at his placement and his school, the Pfizer vaccine had been found safe for children Matthew's age and Matthew's pediatrician had determined there were no known contraindications to Matthew receiving the vaccine. Moreover, as discussed, Matthew was not averse to receiving the vaccination, leaving it to the court to decide. However legitimate Christina's concerns may have been about unknown long-term side effects of the vaccine, it was for the juvenile court to weigh the benefits of vaccinating Matthew—for himself and for those he would interact with—and the possible risks. It was not an abuse of discretion for the court to conclude its authorization to vaccinate Matthew should stand.

## DISPOSITION

The order denying the section 388 petition is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.

17