Filed 12/5/25  P. v. Murillo CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROSEL TORRES MURILLO,<br><br>    Defendant and Appellant. | H051886<br>(Santa Clara County<br>Super. Ct. No. C1899933) |

Defendant Rosel Torres Murillo was convicted by jury of various sexual offenses against his minor stepdaughter.  He contends on appeal that, among other things, the trial judge was biased against him; his trial counsel was constitutionally ineffective; the prosecutor committed numerous acts of misconduct during the trial; and the evidence against him was legally insufficient.  Finding no reversible error, we will affirm the judgment.

## I.    TRIAL COURT PROCEEDINGS

Defendant was charged with oral copulation or sexual penetration of a child 10 years old or younger (Pen. Code, § 288.7, subd. (b); count 1); aggravated sexual assault of a child (Pen. Code, § 269, subd. (a); count 2); and two counts of forcible lewd or lascivious acts involving children (Pen. Code, § 288, subd. (b)(1); counts 3 and 4).  The alleged victim of all four charged offenses was defendant's minor stepdaughter, Jane

Doe.[1]  With respect to counts 3 and 4, it was alleged that the victim was particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)) and defendant took advantage of a position of trust or confidence to commit the offenses (Cal. Rules of Court, rule 4.421(a)(11)).

## A.  WITNESS TESTIMONY

Doe was 16 years old at the time of defendant's 2023 trial.  She testified that defendant began touching her inappropriately when she was eight or nine years old.  Defendant and Doe's mother, Y.D., would sometimes give Doe massages together.  At some point, defendant started massaging Doe without her mother present.  On one occasion, Doe was lying on a bed and defendant was massaging her.  Defendant told Doe to turn onto her back, which she did because she was "scared."  He then touched her breasts and vagina.  Another time, defendant was massaging Doe in his bedroom when she told him she wanted to leave to watch a movie.  Defendant told her to watch the movie on his television.  Doe could not remember what happened next.

Both Doe and her mother Y.D. testified that Doe had told Y.D. about the abuse at some point, but Y.D. did not believe her.  According to Y.D., that conversation took place sometime in 2015 (when Doe would have been eight or nine years old).  Doe said defendant "was touching her breast and her intimate part," meaning her vagina.  Y.D. told Doe that she would talk to defendant, which caused Doe to cry.  Doe admitted having lied at the preliminary hearing when she testified that she had not told her mother about the abuse, and Y.D. admitted having lied when she told a detective that Doe "had never said anything about that."  Y.D. testified under an immunity agreement with the prosecution.

Doe testified that the abuse stopped after she told Y.D. about it, but resumed the summer before she started seventh grade (when she was 11 years old).  Multiple times

---

[1]  Doe is referred to by her first name in the record.  However to protect the privacy of Doe and her family members, we refer to her as Jane Doe and to her family members by their initials.

that summer, defendant entered Doe's room at night while she was in bed. He touched her breasts and vagina. Once Doe woke up sensing moisture on her ear and saw defendant "on the side of [her] bed." She did not remember what happened next.

R.D., defendant's son and Doe's half-brother, was five years younger than Doe. He testified about an incident he witnessed in 2018, when he would have been six years old and Doe eleven. R.D. was sleeping in his parents' bedroom with his father when he woke up to the sound of his father leaving the room. He got up and followed his father, who he saw go into Doe's bedroom. R.D. saw Doe take her shirt and pants off, appearing to do so at his father's direction. He also saw his father touch the part of the body that gives "milk to newborn babies" and "the parts where you have to, like, go to the bathroom." When asked to indicate on a diagram where he had seen his father touch Doe, R.D. circled the breasts and the navel area. R.D. first testified that Doe "didn't do anything" when his father touched her, but then said that Doe had "punched" and "slapped" his father in an unsuccessful attempt to stop him from touching her. Later, when defendant was no longer living in the house, R.D. told Y.D. what he had seen. R.D. was unable to identify anyone in the courtroom as his father.

Early in her seventh-grade school year, Doe told a friend that her stepfather had "raped" her after giving her a massage. The friend testified that Doe cried when she told him and asked him not to tell anyone. Shortly afterward, on September 5, 2018, Doe was visibly upset in class. The teacher sent her to a guidance counselor, who allowed her to cry for "15 to 20 minutes" before asking her what was wrong. The counselor testified that Doe told him "her stepfather had been touching her inappropriately" during massages. Doe explained that "he would touch her underneath her clothes, in the breast area," and "inside her private area." She said she had told her mother about the abuse, but her mother did not believe her. The abuse "discontinued after that for a while" but resumed in July 2018. Doe's stepfather would "sneak into her room" at night, "lick" her

3

neck, and touch "her breasts and her private area, skin-to-skin." The counselor called the police and reported what Doe told him.

Defendant had no physical contact with Doe or her siblings after September 5, 2018. At the 2023 trial, Doe had trouble remembering specific instances of abuse because they were "all blurred into one big thing now." Doe started smoking marijuana in eighth grade, and said that had also "affected [her] memory" to the extent that she could not remember "what [she] did yesterday." She described marijuana as "the only thing that helped [her] sleep at night and made [her] feel happy." The night before Doe's testimony began, she had an "argument" with Y.D. that led to Y.D. calling the police. Doe testified that although Y.D. had "claimed that [Doe] hit her," the "complete opposite" was true; Y.D. had hit Doe, who had "a bruise … on [her] head and on [her] shoulder."

A psychologist testified as an expert on Child Sexual Abuse Accommodation Syndrome (CSAAS), and confirmed that CSAAS cannot be used "to say a kid was abused" but can be used to dispel "myths and misconceptions" about how children respond to abuse. According to the expert, children who are abused may keep the abuse a secret; feel helpless if they report the abuse and nothing is done about it; find ways to cope with the abuse; report the abuse in a delayed or unconvincing manner; or recant their allegations.

## B. PAST RECOLLECTIONS RECORDED

Over partial defense objection,[2] several videos of Doe's interviews with investigators on September 5, 2018 were admitted into evidence under Evidence Code section 1237. In the interviews, Doe provided additional details about specific incidents

---

[2] Defense counsel objected only to the admission of those statements related to the first wave of alleged abuse when Doe was eight or nine years old, and did not object to the admission of statements related to abuse in 2018. Alternatively, counsel expressed a preference that, if the statements were to be admitted, they be shown to the jury in video format.

of abuse. Doe testified that she had told the truth during the interviews (although she acknowledged lying about whether she had disclosed the abuse to her mother). She also acknowledged the abuse was fresher in her mind at the time because she had not yet started smoking marijuana.

Doe told a detective about three incidents that took place when she was eight or nine years old. In the first, while defendant was massaging Doe, he "started touching" her vagina and "chest area" for approximately 30 minutes. At one point, Doe attempted to leave and defendant "carried [her] back up to the bed." Defendant touched Doe's vagina "under [her] clothes" and put his fingers inside it. When Doe told defendant she wanted to leave, he said, "no, just a little longer." Doe eventually ran out of the room. The second incident occurred a week or two later when defendant "touched [her] in [her] vagina again" during a massage. Defendant also "started touching [her] chest area" and did not stop when she asked him to. He touched Doe's breasts and vagina "under [her] clothes" and she felt him "moving his fingers" while touching her vagina. In the third incident, defendant touched Doe's vagina "inside" for 20 minutes. Doe then left the room to watch a movie. The parties stipulated that the movie Doe watched premiered on television on July 31, 2015.

Doe also told investigators about being abused in the summer of 2018. She said she kept her bedroom door locked, but defendant would use a key to open it. One night, Doe woke up because she thought she felt someone licking her ear. She saw defendant run out of the room and close the door. About a week later, Doe woke up to defendant licking her neck and touching her breast. Doe told defendant to leave, which he did. Another night about two weeks later, defendant entered Doe's room and touched her vagina. Between July and September of 2018, defendant went into Doe's room approximately five times. The last time he did so was about two weeks before the September 5 interview. Doe would pretend to be asleep, and defendant would stand by the door for a few minutes. Apparently believing Doe to be asleep, defendant would then

5

walk over to her bed and start touching her. He put his fingers inside her vagina, put his hands inside her shirt to touch her breasts, and kissed her on the lips. Doe was frightened when defendant was touching her. She would pretend to wake up and then tell defendant to leave, at which point he would walk out of the room.

## C. VERDICT AND SENTENCING

The jury found defendant guilty as charged and found true the alleged aggravating circumstances. The trial court sentenced defendant to fully consecutive indeterminate terms of 15 years to life on counts 1 and 2, consecutive to 10-year determinate upper terms on counts 3 and 4, for an aggregate sentence of 30 years to life consecutive to 20 years.

## II. DISCUSSION

Defendant (represented by retained counsel on appeal) asserts that his trial was pervaded by numerous instances of judicial bias, prosecutorial misconduct, and ineffective assistance of counsel. He also contends that none of his convictions are supported by substantial evidence. In addition to those claimed grounds for reversal, he lists in his opening brief 21 "matters preserved for appeal"—many of which are not accompanied by any specific legal argument or citations supporting his assertion of reversible error. He concludes his briefing by requesting modification of his sentence as an alternative to reversal of his convictions, without stating any legal grounds or providing any argument in support of his alternative request. We address in this opinion the arguments that are sufficiently developed to permit our analysis. "To the extent defendant perfunctorily asserts other claims, without development and, indeed, without a clear indication that they are intended to be discrete contentions, they are not properly made, and are rejected on that basis." (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2.)

6

## A. DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IS DENIED

As a preliminary matter, we deny defendant's request for judicial notice filed on January 10, 2025, which was deferred for consideration with the merits of the appeal. Defendant asks us to take judicial notice of three matters that he describes as "fact[s] and proposition[s] of generalized knowledge": (1) "that human beings are not automatically rational" or in other words, as stated by one psychologist, " 'that Humans are not well described by the rational-agent model' "; (2) that "using []  marijuana under the age of 30 years old can cause severe memory issues including loss of memory related to schizophrenia and other very serious diagnoses"; and (3) that research about those effects of marijuana use "is widespread, easy to access, obvious to the public, and might have been judicially noticed or proffered as evidence at trial by the parties."

None of the information referenced in the request for judicial notice was presented in the trial court.  Defendant therefore asks us to take judicial notice of the three identified assertions, contending that they "are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute." (Evid. Code, § 452, subd. (g); see Evid. Code, § 459.)  He alternatively argues that the assertions "are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (Evid. Code, § 452, subd. (h).)  Defendant provides no support for his contention that the general public is familiar with academic research regarding rational-agent theory, its applicability to human behavior, or the effects of marijuana use on memory within a specific age range of users, such that any research findings in those fields could be deemed matters of common knowledge.  Although he provides excerpts from publications that appear to state conclusions consistent with his assertions, those excerpts do not establish that their contents reflect scientific consensus such that they are not reasonably subject to dispute.  (Cf. *Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1142–1143.)  Nor does a screenshot of internet search results—which do not appear to include

7

the single study cited by defendant in relation to the effects of marijuana use—establish that research consistent with that study is "widespread, easy to access," or "obvious to the public" as defendant suggests. We thus deny defendant's request for judicial notice.

## B. DEFENDANT HAS NOT MET HIS BURDEN OF DEMONSTRATING JUDICIAL BIAS

Defendant asserts that "everyone involved in this trial," including the trial judge, both "succumbed to implicit biases against Hispanic males and immigrants that runs deep in California" and "succumbed to an over-sensitivity for the veracity of crime reports" made by alleged victims of child sex abuse. He acknowledges that the judge attempted to preside over the trial impartially, but contends reversal is required because the judge's implicit biases constituted structural error despite the judge's best efforts.

To the extent defendant argues that the trial judge was disqualified due to bias (see Code of Civ. Proc., § 170.1, subd. (a)(6)), he forfeited the issue by not raising it in the trial court. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 626.) To the extent he contends judicial bias so permeated the trial as to deprive him of due process and require reversal notwithstanding his failure to object, we reject that argument. "Mere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111.) "Moreover, a trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review." (*Id.* at p. 1112.)

Defendant's assertion of judicial bias is based on three alleged errors made by the trial court, none of which actually constitutes error or establishes bias. Defendant first contends the trial judge "inappropriately, prejudicially, and unconstitutionally allowed" the prosecutor to "excuse" Doe's "problematic testimony" as the product of a physical altercation with her mother the previous night. He cites to a portion of the reporter's transcript in which the court, the prosecutor, and defense counsel discuss Doe's testimony outside the presence of the jury. All three acknowledged that her first day of testimony

8

did not go as the prosecution had planned, and the prosecutor suggested the reason may have been the previous night's incident between Doe and her mother. (That incident had been communicated to the prosecutor via email from the Victim Advocate shortly before opening statements, and the prosecutor immediately disclosed the communication to defense counsel and then to the court.) The trial court agreed with aspects of the prosecutor's assessment, as did defense counsel. Given the new circumstances, the court encouraged both counsel to "work out a resolution" of the case (which they were unable to do). The court also indicated to the parties that recordings of Doe's interviews with investigators could possibly be admitted into evidence, but only with proper foundation. In our view, the entire exchange illustrates the trial court's efforts to conduct a fair trial that served the interest of justice, not judicial bias.

Defendant next faults the trial court for failing to "admonish or instruct the jury regarding [Doe's] physical altercation, marijuana use, and memory loss" and the effects of those factors on her testimony. Defendant cites no legal authority to support the implicit assertion that he was entitled to an instruction on any of those issues—even without a request, which he did not make. He does not explain how the purported error indicates bias, and we see no connection. We also note that, in suggesting that Doe's altercation with Y.D. may have affected her testimony and the judge should have instructed the jury accordingly, defendant appears to advance an argument that he deems "inappropriate[], prejudicial[], and unconstitutional[]" when made by the prosecutor.

Defendant's final allegation of bias is based on the trial court ultimately admitting Doe's recorded interviews into evidence. Defendant argues the evidentiary foundation for their admission was inadequate, given Doe's inability to remember and authenticate their contents at the time of trial. There was no apparent dispute that the recordings depicted Doe's interviews with investigators on September 5, 2018. One video, which Doe said depicted her conversation with a detective on that date, was admitted subject to "the right for the defense to further argue foundation[.]" At one point, the court sustained

9

a defense objection to admission of another recording after Doe said she could not confirm it depicted the same conversation. The prosecutor then elicited testimony observing that Doe and the detective were wearing the same clothing in both videos, after which the court admitted the second video "over the objection of the defense." When later placing her objections on the record, counsel focused on whether the recordings qualified as past recollections recorded under Evidence Code section 1237 given the passage of time between the alleged abuse and Doe's interview with the detective. Counsel did not object to the admission of certain other recordings that concerned more recent abuse. On this record, we cannot say the trial court abused its discretion in finding adequate foundation for admission of the recordings notwithstanding Doe's spotty memory of the conversations depicted. We also see no support in the record for defendant's assertion that the court's ruling was influenced by bias.

## C. DEFENSE COUNSEL DID NOT PROVIDE INEFFECTIVE ASSISTANCE

Defendant alleges 19 instances of constitutionally defective representation to argue that he was denied the right to effective assistance of counsel. Many of the asserted defects concern quintessential matters of trial strategy typically left to the tactical discretion of counsel, such as deciding whether to object to testimony elicited by the prosecution. None requires reversal.

To establish ineffectiveness of trial counsel in violation of a defendant's right to counsel under the Sixth Amendment to the United States Constitution, a defendant must show both deficiency in counsel's performance and prejudice from the deficiency. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–217.) Deficient performance is rarely shown if there was a tactical reason for trial counsel's conduct. (See *People v. Cruz* (1980) 26 Cal.3d 233, 255–256 ["except in rare cases, an appellate court should not attempt to second-guess trial counsel as to tactics"]; *People v. Bolin* (1998) 18 Cal.4th 297, 317 (*Bolin*) [affirming conviction when alleged failure to object "may well have been 'an informed tactical choice within the range of reasonable

10

competence' "].)  To prove prejudice, a defendant must affirmatively show a reasonable probability that, but for his trial counsel's errors, the result would have been different. (*Ledesma*, at pp. 217–218.)

Here, defendant shows neither deficient performance nor prejudice.  Defendant faults trial counsel for not objecting to the admission of CSAAS expert testimony on general grounds that have been rejected by the California Supreme Court.  (See *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300–1301 (*McAlpin*).)  He also asserts counsel was ineffective for not objecting to the exclusion of defendant's "state of mind" and "medical or health related issues" from opening statements, although he acknowledges it is "unclear what effect this had on the trial."  We note that it apparently had no effect, given counsel's chosen defense and her statement to the court that she was "not aware of any issues" relating to defendant's health.  Regarding evidence admitted under the fresh complaint doctrine, defendant suggests counsel should have objected on the basis that Doe's disclosures were not sufficiently "fresh," but he provides no substantive explanation of why the relevant statements were inadmissible under the circumstances. (See *People v. Brown* (1994) 8 Cal.4th 746, 750 ["the 'freshness' of a complaint, and the 'volunteered' nature of the complaint, should not be viewed as essential prerequisites to the admissibility of such evidence"].)  Defendant also argues counsel should have renewed an objection to admission of a photograph depicting Doe at the age when the abuse allegedly began, but counsel's earlier objection was overruled and any further objection may have been futile.  Even assuming an objection would not have been futile, defendant does not contend admission of the photograph was prejudicial.

According to defendant, trial counsel should have objected or otherwise responded to certain other portions of the prosecution's case on the grounds that some of the prosecutor's questions had been asked and answered; the questions were leading, irrelevant, or prejudicial; the questions lacked foundation, misstated previous testimony, or called for narrative answers; Doe testified to hearsay, some of which purportedly

11

contradicted her testimony at the preliminary hearing; the prosecutor "exploited" Doe's memory issues; certain topics covered on redirect examination of various witnesses exceeded the scope of cross-examination; and R.D.'s testimony was "inherently speculative" hearsay lacking foundation. The "decision whether to object, move to strike, or seek admonition … is highly tactical, and depends upon counsel's evaluation of the gravity of the problem and whether objection or other responses would serve only to highlight [it]." (*People v. Catlin* (2001) 26 Cal.4th 81, 165.) In each instance identified by defendant, counsel may have reasonably determined that an objection or other response would not benefit the defense. We observe that many of the instances concern only marginal issues or appear to reflect nothing more than counsel's correct understanding of the governing law and the trial court's proper application of it. An attorney does not provide deficient assistance if she fails to make a meritless objection. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

In addition to alleging that trial counsel failed to adequately respond to the prosecution's case, defendant argues counsel should have conducted his defense differently. He contends counsel "erred by clarifying testimony beneficial to the prosecution" on cross-examination and "failed to bring any evidence or witnesses" on behalf of the defense. Those tactical choices do not support a claim of ineffective assistance: they reflect an overarching strategy of focusing the jury's attention on the question of Doe's credibility. Counsel's cross-examination of Doe served that purpose by highlighting confusing or inconsistent portions of her testimony, while avoiding being overly combative. We also note that counsel had no control over the answers Doe gave to her questions. (See *People v. Cleveland* (2004) 32 Cal.4th 704, 746–747.) Defendant offers no reason to believe that Doe would have given an answer beneficial to the defense if asked "whether she might have been suffering from … schizophrenia" or another serious mental disorder. And he provides no legal basis for his argument that counsel should have asked for Doe to be "tested for a genetic predisposition to confirm whether

12

she is genetically predisposed to mental disorders related to cannabis use." To the extent defendant implies counsel unconstitutionally prevented him from testifying, that contention is undermined by the record: Counsel represented to the trial court in defendant's presence that she had advised him of his constitutional right to testify, explained the pros and cons of doing so, and he had decided to follow her recommendation that he not testify.

### D. DEFENDANT HAS NOT SHOWN THE PROSECUTOR COMMITTED MISCONDUCT

Defendant argues the prosecutor improperly elicited unclear, irrelevant, and prejudicial testimony; introduced evidence without foundation; exceeded the proper scope of redirect examination; called a CSAAS expert to testify; and misstated evidence during closing argument. Defendant did not claim in the trial court that any of the prosecutor's actions constituted misconduct. "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) We reject defendant's argument that after defense counsel unsuccessfully objected to one of the prosecutor's questions as having been asked and answered, objections on other grounds to other actions would inevitably have been futile. We have reviewed each act identified by defendant and we conclude that none rises to the level of misconduct that would warrant reversal.

The first alleged act of misconduct was eliciting "unclear" testimony from Doe about basic biographical information. When the prosecutor asked her how many siblings she had, she said "four"; when asked to name them, she named three. She identified two of them as defendant's children. When the prosecutor asked how much older one of those siblings was than the other, she initially answered, "I don't know math." In response to follow-up questioning, she said one sibling was about four years older than the other. Eventually, the prosecutor moved on to a different topic and told Doe, "I don't

13

want you to have to do any more math." Defendant does not explain how Doe's testimony was so "unclear" that the prosecutor's questioning constituted misconduct, and we see no possibility that it affected the outcome of the trial or deprived defendant of due process.

Defendant's other allegations of misconduct similarly lack merit. He contends the prosecutor made misstatements both in questioning Doe and during closing argument, but defendant's claim is based on selective snippets of the record. Most of the purported misstatements turn on exactly what Doe said (or meant) during specific portions of her testimony. A prosecutor may not pose questions to a witness that suggest facts harmful to the defendant without a good faith belief that such facts exist. (*People v. Young* (2005) 34 Cal.4th 1149, 1186.) Nor may a prosecutor vouch for the credibility of a witness by referring to evidence outside the record. A prosecutor may, however, mention the " 'apparent honesty or reliability' " of a witness based on facts in the record or reasonable inferences drawn from those facts. (*People v. Romero and Self* (2015) 62 Cal.4th 1, 39.) Here, the prosecutor's questions to Doe and his comments during closing argument appear to reflect a good-faith interpretation of Doe's testimony and reasonable inferences from her testimony. Even if any of the prosecutor's questions or comments relating to Doe's testimony were objectively inaccurate summaries (and not simply reasonable disagreement with defendant's preferred interpretation of the same evidence), we note that the trial court properly instructed the jury that "[n]othing that the attorneys say is evidence." Because we presume that jury followed the court's instructions, we see no reasonable probability that the jury considered the challenged comments for an improper purpose. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852.)

Nor has defendant shown that the trial court abused its discretion in finding adequate foundation for the admission of Doe's recorded interviews with investigators, as we have discussed. We therefore reject defendant's related argument that the prosecutor committed misconduct by introducing the recordings without foundation. We also reject

14

defendant's contention that the prosecutor committed misconduct by introducing some of the recordings on redirect examination without seeking leave of court. (See Evid. Code, § 774.) The record indicates that certain recordings were not introduced on direct examination because they depicted conversation in Spanish and the parties had not yet agreed on the best means of providing the jury with an English translation. (Conversations in the recordings introduced on direct examination were in English.) Defendant does not explain how the prosecution's description of the parties' ongoing discussions to the trial court differs from a proper request for "leave of the court" (as required under Evidence Code section 774) or why, given those circumstances, allowing the prosecutor to introduce the Spanish recordings on redirect examination was an abuse of the discretion expressly granted to the court under the same statute. The prosecutor therefore did not improperly introduce evidence without permission from the court or otherwise improperly utilize redirect examination.

Defendant's remaining discernible allegation of misconduct concerns the prosecutor's use of CSAAS expert testimony. We reiterate that the California Supreme Court has deemed such testimony admissible. (*McAlpin*, *supra*, 53 Cal.3d at pp. 1300–1301.) "Although inadmissible to prove that a molestation occurred, CSAAS testimony has been held admissible for the limited purpose of disabusing a jury of misconceptions it might hold about how a child reacts to a molestation." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744.) The CSAAS testimony in this case was proper under *McAlpin*, as it was not used to prove that abuse occurred under the particular facts of the case. Defendant's complaints that the expert's testimony presupposed defendant's guilt and was "unresponsive to the weaknesses in [Doe's] testimony" are belied by the record. And defendant's stated concern regarding the "inherently unfair use of the prosecutor's war chest" to fund CSAAS experts without commensurate defense resources does not supply legal grounds to reverse the judgment.

15

## E. THE VERDICT AND FINDINGS ARE SUPPORTED BY SUFFICIENT EVIDENCE

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Bolin*, *supra*, 18 Cal.4th at p. 331.) We "presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.) Defendant contends all four of his convictions must be reversed due to insufficient evidence. To overturn any of those convictions, "it must clearly appear that upon no hypothesis whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

In assessing evidentiary sufficiency, we do not reweigh the evidence or second-guess credibility determinations. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1118.) We thus cannot exclude "the prior victim statements and [Doe]'s testimony and [R.D.]'s testimony" from our consideration, as defendant urges us to do. Defendant suggests that Doe and R.D. were not credible witnesses. He speculates that Doe's allegations may have been "a product of her imagination, heavy marijuana use, physical trauma to the head," anger at her mother, and a movie she watched around the time of the alleged abuse. (The 2015 film *Descendants* was the subject of a stipulation at trial, but the film's content does not appear to be discussed anywhere in the record.) Defendant suggests R.D. may have "fallen victim to the Miltonic binaries" that misled the "Puritan children of Salem, Massachusetts" during the Salem witch trials. But defense counsel made counterarguments about witness credibility, which the jury apparently rejected. Doe's testimony and previous statements—corroborated in various respects by the testimony of numerous witnesses, including R.D.—provide substantial evidence supporting her allegations of abuse.

16

As to counts 3 and 4, defendant argues that the element of force or duress was not proven.  (Count 3 concerned events when Doe was eight or nine years old, and count 4 concerned events took place when she was 11 years old.)  The evidence established that defendant, Doe's stepfather who was significantly older and larger, began sexually abusing her when she was eight or nine years old.  Doe testified that during one early incident, defendant told her to turn onto her back and she complied because she was "scared."  She had previously told a detective that when she tried to leave the room defendant "carried [her] back up to the bed" and refused to stop when she asked him to.  In a later incident when Doe was 11 years old, defendant would enter her locked bedroom at night to sexually abuse her.  Doe told investigators that she was scared during the incident, and R.D. testified that Doe had "punched" and "slapped" defendant during an incident R.D. witnessed.  Their testimony supports the jury's finding that counts 3 and 4 involved force or duress.  (See *People v. Martinez* (2024) 105 Cal.App.5th 178, 190–191; *People v. Jimenez* (2019) 35 Cal.App.5th 373, 392–393.)

## F. ANY ERROR IN ADMITTING DOE'S OUT OF COURT DISCLOSURES WAS HARMLESS

Under Evidence Code section 1240, subdivision (b), statements describing an event perceived by the declarant are not barred by the hearsay rule if "made spontaneously while the declarant was under the stress of excitement caused by such perception."  Defendant argues the trial court abused its discretion by allowing Doe's mother and Doe's counselor to testify about the disclosures Doe made to them, which he contends were inadmissible under the statute.  (Doe's disclosure to the counselor was expressly admitted for its truth under Evidence Code section 1240; Doe's disclosure to her mother was not expressly admitted under Evidence Code section 1240 but was admitted over a hearsay objection, and the trial court does not appear to have instructed the jury to consider it for any limited purpose.)

17

Although there was evidence that Doe made the disclosures during periods when abuse was occurring, both disclosures concerned acts of abuse that had taken place in the past. Evidence established that defendant had last abused Doe about two weeks before she disclosed the abuse to her counselor, and some of the abuse had taken place years earlier. It is unclear how much time had passed between the abuse and Doe's disclosure to her mother, but Y.D. testified that Doe initiated the conversation by approaching her one night and telling her "she wanted to say something." The circumstances of both disclosures suggest that Doe had reflected before disclosing the abuse, despite being visibly upset at certain points of both conversations. (See *People v. Lozano* (2024) 101 Cal.App.5th 366, 378.)

Assuming without deciding that the trial court improperly admitted the statements for their truth, the error does not require reversal.[3] Defense counsel did not object to admission of the same statements as fresh complaint evidence and, as we have discussed, we are not persuaded that counsel was ineffective for failing to do so. The jury was thus properly permitted to consider the statements for the purpose of corroborating Doe's testimony. Further corroboration was provided by Doe's friend, whose testimony about Doe's disclosure to him was admitted under the fresh complaint doctrine. Doe's statements to investigators were properly admitted for their truth as past recollections recorded, and they contained more detail about the abuse alleged than the statements testified to by Y.D. and the counselor. And R.D.'s testimony provided still more detail about an event he said he witnessed. We see no reasonable probability of a different result had the jury not been permitted to consider the two challenged disclosures for their truth. (See *People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1526–1527.)

---

[3] Defendant asserts in his reply brief that it is "impossible" for him to assess the prejudicial impact of any individual error made by the trial court, and that requiring him to make such "formalistic arguments" would violate his right to appeal. We nonetheless consider his argument under the applicable prejudice standard.

18

**G. DEFENDANT'S OTHER ARGUMENTS DO NOT RAISE ANY REVERSIBLE ERRORS**

We have considered and addressed the numerous "matters preserved for appeal" defendant identifies in the so titled section of his opening brief insofar as they relate to the preceding contentions. Defendant further argues in that section that the trial was conducted in violation of his constitutional rights, including his right to testify and his right to confront his accusers. (He describes the asserted constitutional violations as "matters preserved for appeal" despite defense counsel not objecting on those grounds in the trial court.) As we have discussed, defense counsel informed the court that she had advised defendant of his right to testify and he had elected not to. The court was not required to inquire further or obtain a personal waiver from defendant. (*People v. Hayes* (1991) 229 Cal.App.3d 1226, 1232.) Defendant also had full opportunity to cross-examine Doe at trial, undermining his argument that admission of her recorded interviews violated his confrontation right. (*People v. Cowan* (2010) 50 Cal.4th 401, 468.)

To the extent defendant attempts to raise additional issues as "matters preserved for appeal," or attempts to raise new issues for the first time in his reply brief, those issues are forfeited and we do not consider them. The opening brief points to defense objections which were overruled or sustained, but cites no legal authority or connection them to any apparent appellate contention. He also alleges without case-specific discussion or citation to the record that "the prosecution caused Hobbesian perversions of the People of California's sovereignty." In support of that assertion, he discusses artificial intelligence and cites to the work of Thomas Hobbes; a United States Supreme Court case from 1793 concerning sovereign immunity; and a United States Supreme Court case from 2024 concerning presidential immunity. "When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066.) Nor do we consider arguments made for the first time in a reply brief. (*Ibid.*)

19

(Topics defendant discusses in his reply brief include eugenics, prison overcrowding, forced sterilization, and political issues relating to immigration.) Similarly, defendant concludes his opening and reply briefs by asking us to modify his sentence in the event his convictions are not reversed, but he does not support the request with argument or citation to authority.

Having determined that the lone possible error identified by defendant was not prejudicial, and that defendant has not identified any other errors in the conduct of his trial, we necessarily reject his assertion that multiple errors cumulatively prejudiced him.

### III.  DISPOSITION

The judgment is affirmed.

_____
Grover, Acting P. J.

**WE CONCUR:**


_____
Lie, J.




_____
Wilson, J.




H051886
*The People v. Murillo*